Edward J. Gtreestfield, J.
Prior to the trial of this case before me, a preliminary hearing was had on the motion of the defendants to suppress evidence seized in the defendant Mann’s apartment tending to connect him with the commission of the crime. The motion was predicated upon the alternative theories that there was no valid basis for the arrest or that the seizure of evidence took place first, and the arrest thereupon followed. After hearing the testimony, this court decided that there was a valid basis for the arrest, and that the arrest having taken place before the discovery of .the evidence, the seizure was proper. The motion to suppress was thereupon denied, and the case proceeded to trial.
On the trial, the complainant Frederick Watford, a married man for 38 years, testified that in'the early morning hours of June 15, 1968 he agreed to drive a young lady, the defendant Carol -Mack, from Harlem to her home in The Bronx. She invited two young men who were accompanying her to ride along in the -back seat. Watford paid little attention to them, but he believed them to be the defendants Mann and Ferguson. He dropped them off at Carol Mack’s house, but then he and Miss Mack drove off, first to a party in an after-hours club, and then to an all-night restaurant. He was drinking rather heavily. When they got back to Miss Mack’s house, she took his bottle and disappeared into the building. He followed after her, and entered an apartment one flight up, at the head of the stairs. In the apartment were two men, whom he identified as Mann and Ferguson, and they announced, 11 This is a robbery. ’ ’ Mann then stripped him to his underwear and took the articles in his pockets: his watch, his car keys, and the ring from his fingers. Watford ultimately made his way out of the building, found his car was gone, and by pulling a fire alarm summoned the Fire Department and the police. He did not, on that day, take the police back to the premises where he claimed to have been robbed.
The defendants each disputed Watford’s version of the events of June 15th. A witness was produced who testified he and his cousin, and not defendants Mann and Ferguson, were the males who accompanied Watford and Miss Mack on their ride uptown. Ferguson claimed he was elsewhere on the night of the crime, and had a witness to corroborate it. Carol Mack testified she did not know Ferguson at all, and Mann only as a resident of her building, that she left Watford quite drunk in his car, and proceeded directly to her own apartment. Mann testified that in the early morning of June 15th he was with one Alonzo Walker, not Ferguson, and that' Watford had blundered into his apartment, quite drunk, looking for Carol Mack. He claims that after *109 several hours of drinking and talking together Watford left, leaving behind a batch of boat-ride tickets they agreed to sell, his license, credit cards, bank deposit slips and other personal papers he evidently overlooked, and his ring, watch and keys which Walker told him he had beaten Watford for.
On the evening of June 21st, six days later, Oarol Mack, who says she heard of the robbery of Watford the next day, voluntarily appeared at the police precinct house, and told them the men they were looking for were in Apartment 2D, at 520 East 147th Street — 'Mann’s apartment. The detectives, accompanied by Watford, proceeded to those premises, and when Mann opened the door, dressed in his underwear, Watford immediately identified him as one of the robbers. The police entered the apartment, placed Mann under arrest, and directed him to get dressed. As he proceeded down the corridor to the bedroom, the police followed him. In the bedroom was the defendant Ferguson. With some hesitancy, Watford identified him as his other assailant. On the top of the bureau in the bedroom, in open sight, were Watford’s ring, watch, cigarette lighter, boat-ride tickets, bank deposit slips, and credit cards.
On weighing all the testimony, this court concluded that the case against Oarol Mack and Phil Ferguson as participants in the robbery of Watford had not been proven beyond a reasonable doubt. Miss Mack’s actions were more compatible with innocent explanation than the alternative conclusion that she was the Judas goat leading the lamb to slaughter. The identification of Ferguson was shaky, and his alibi, together with Mann’s testimony that on the night of the robbery he was with Alonzo Walker, and not Ferguson, necessitated his acquittal. There was no doubt about Mann’s participation, however. Admittedly, he was in his apartment when Watford came blundering in in pursuit of Carol Mack. His story, that they just drank and chatted, that Watford gave him a batch of boat-ride tickets to sell, that Watford left his apartment fully dressed but forgot to take his auto license, his credit cards, and his bank deposit slips with him, that later he saw his friend Walker with Watford’s ring and keys which Walker said he had beaten him for in Mann’s absence, and that Mann took them back and held them all in his apartment with the intention of returning them when he saw Watford again, was beyond the belief of the most credulous. Mann was found guilty of robbery in the second degree and grand larceny in the third degree.
Mann now moves to vacate the convictions on two grounds — that he could not properly be convicted in view of the acquittal of the other two codefendants who were named in the indictment *110 as Ms accomplices, and that the evidence found in his apartment linking him with the crime was illegally obtained. The first contention can be readily disposed of. Defendant relies on People v. Munroe (190 N. Y. 435) in support of the proposition that that where two accomplices are jointly tried for robbery, one cannot be acquitted while the other is found guilty. In that case, however, there was no difference in the evidence as to both defendants —■ either the witnesses inculpating both were correct in their observations or they were not. Since the statute requires for conviction of the crime of robbery in the second degree proof that that robbery was committed in the presence of another (Penal Law, § 160.10), if the trier of the facts found no other person to be present, the conviction could not stand.
In this case, however, the court did not find that no other person was present when Mann committed the robbery. It found codefendants Mack and Ferguson had not been proved to have been present, but both Watford, the complaining witness, and Mann, the defendant, testified there was someone else present. Mann said it was one Alonzo Walker, Watford thought it was Ferguson (though not with sufficient certainty to satisfy the court), but even if it was not proved to have been Ferguson or Mack, someone besides Mann was there to help pin down Watford, remove his pants, and help relieve him of his possessions. There is nothing either conceplually or factually implausible in the identity and complicity of one person accused of acting with an accomplice being readily established, while the identity of his accomplice has not been proved beyond a reasonable doubt. “ The question of the one defendant’s guilt cannot turn upon the establishment of the other’s guilt; it is an independent issue to be tried out alone.” (People v. Kief, 126 N. Y. 661, 663. See, also, People ex rel. Guido v. Calkins, 9 N Y 2d 77, 81.) Even though the crime charged is one that must have been committed in the presence of another, it need not be a, person named in the indictment so long as the evidence shows and the trier of the facts is convinced that someone besides the convicted defendant was present as an accomplice. (People v. Eichner, 168 App. Div. 200.)
The second point raised by the defendant Mann in Ms motion to vacate the judgment of conviction, that the evidence which indisputably connected him with the crime and which was found in his apartment was the result of an illegal search and seizure, requires more extended consideration. This court had already, in the hearing prior to trial, ruled the evidence was legally obtained as an incident .to a lawful arrest. Subsequently thereto, the United States Supreme Court handed down its decision *111 in Chimel v. California (395 U. S. 752) holding that even after a legal arrest, police may not search the premises beyond the area immediately surrounding the person arrested without a proper search warrant. Defendant argues that this decision necessitates a reversal of the court’s prior, position.
In the Chimel case, three police officers arrested a burglary suspect as he entered his house. They had a warrant for his arrest, but not for a search of the premises. Over objection, they searched the entire house from attic to garage, and had drawers in the master bedroom and sewing room opened to look for the fruits of the burglary. The search took 45 minutes to an hour. The court, in a 7-2 decision, overruled prior decisions in Harris v. United States (331 U. S. 145), and United States v. Rabinowitz (339 U. S. 56) which had conceded to law enforcement authorities the right to search the place of arrest to find and seize things connected with the crime. It sharply limited the right of search incident to arrest to “ the arrestee’s person and the area ‘ within his immediate control ’ — construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.” The court then declared: 1 ‘ There is no comparable justification, however, for routinely searching rooms other than that in which an arrest occurs ” (p. 763).
It is this statement on which defendant relies. The Chimel case, he argues, says to the police “ stay out” of any room other than that in which the arrest is made, unless you have a search warrant. Here the arrest took place in the entryway, while the evidence was found without a warrant in his bedroom. The. physical separateness of the two locations compels exclusion of evidence so seized, he urges. I refuse to find the prohibition against the warrantless search 'to be as broad, as sweeping, and as simple as that.
As pointed out by Mr. Justice White in his dissenting opinion in the Chimel case, “ The [Fourth] Amendment does not proscribe ‘ warrantless searches ’ but instead it proscribes ‘ unreasonable searches ’ and this Court has never held nor does the majority today assert that warrantless searches are necessarily unreasonable ’ ’ (pp. 772-773).
A search conducted incident to an arrest may be either a productive search — to uncover and preserve evidence, whether the fruits of the crime or the means by which it was perpetrated —■ or it may be a protective search, to locate or negate the existence of weapons which might threaten the safety of the arresting officers, to thwart a possible attempt at escape, and to prevent the destruction of evidence in the arrestee’s control. (Cf. Terry *112 v. Ohio, 392 U. S. 1, 29, and Sibron v. New York, 392 U. S. 40.) All the Justices of the Supreme Court are in apparent agreement that a protective search for weapons or destructible evidence on the person or in the immediate vicinity of the person arrested is reasonable and proper. Differences arise when the police officers go further afield. This case calls for a further refinement of the Ghimel doctrine, for here there was no search, in the real sense of the word, leading to the discovery of the evidence in question, but there was a seizure. Was it unreasonable?
When defendant Mann was arrested at the entryway of the apartment, the police officers directed him to get dressed, and as a matter of course followed him down the corridor and into the bedroom. There they saw the codefendant Ferguson sitting on the bed, and on top of the bureau, in open view, were the items of personal property which the complainant Watford, who had accompanied the police into the bedroom, promptly identified as his. While some of the police may be open to the accusation that, aware of the rulings of the Supreme Court, they conveniently find all evidence in plain and open view, in this case there is no substantial dispute but that that was the fact. Under those circumstances the police were not required to ignore what they saw, leave to obtain a warrant, and hope the evidence would still be there on their return. If they had no basis for seizing the evidence they saw then and there, then there would be no justification for them to exclude anyone from the apartment, including the arrestee’s confederates, who might seek to dispose of the evidence after the seizure by the police but before a warrant was obtained. And which would be the greater invasion of privacy — the police taking the objects in plain view along with the defendant quietly to the police station, or the posting of guards conspicuously at the entrance to defendant’s premises until someone returned with the warrant, advertising the defendant’s suspected criminality to all his world?
“ It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence.” (Harris v. United States, 390 U. S. 234, 236; Ker v. California, 374 U. S. 23, 42-43.) The majority of the court in Chimel, in overruling Harris v. United States, 331 U. S. 145, supra) did not disagree with that statement. They held that an officer, merely by virtue of an arrest, had no right to “ look around ” through all rooms on the premises.
*113 By what right then did the police officers proceed to go from the point of the arrest to the bedroom and see what there was to be seen there ? The arrest conferred no general license on them to look about to satisfy their curiosity, in the hope that vital evidence might be carelessly strewn about in open sight. There must be other legitimate reasons, and in this case, despite the suggestion of the Supreme Court majority opinion that there can be no “ point of rational limitation, once the search is allowed to go beyond the area from which the person arrested might obtain weapons or evidentiary items ” (Chimel v. California, supra, p. 766), I believe there were such legitimate reasons.
Certainly it was reasonable for the police, who arrested defendant Mann in a state of undress, to accompany him to the bedroom and keep him under continuous surveillance while he was putting on his clothing. This is not only common sense, it is mandated by the Code of Criminal Procedure (§§ 171, 172). Secondly, even if Mann had been fully dress'ed, it was equally reasonable for the police officers, as a matter of self-protection and as a safeguard against any attempt to escape, knowing Mann had not acted alone and knowing another person might be present in the apartment, to check the adjacent rooms for the presence of any potential accomplice. In one such room they found codefendant Ferguson, and some of the fruits of the crime. Under those circumstances, they were not obliged to disregard what they saw, for practical necessity conferred the mantle of legitimacy on their presence in the other room to see and to seize the evidence in question. Reasonableness of the search is the key, and what the police did here was pre-eminently reasonable. Arrest gives the police the right to search ' the person and the immediate surroundings of the arrestee; Surveillance of a prisoner and the right to check for confederates or accomplices extends that right to permit the police on over-all view of the other rooms in the premises, with a concomitant right to seize evidence or weapons in plain view. ‘ ‘ When the things received in evidence are the fruits of lawful search, the claim of privilege is hollow ”. (People v. Chiagles, 237 N. Y. 193, 198.)
The motions to vacate the conviction g,re denied.