**UNITED STATES of America,
Appellant,**

v.

**Donald L. COOKS, Appellee.**

**No. 73–1484.**

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 4, 1973.

Decided March 13, 1974.

Rehearing Denied July 25, 1974.

Henry A. Schwarz, U. S. Atty., E. St. Louis, Ill., Jerry J. Murphy, Asst. U. S. Atty., St. Louis, Mo., for appellant.

H. Carl Runge, Jr., E. St. Louis, Ill., for appellee.

Before SWYGERT, Chief Judge, KILEY, Senior Circuit Judge, and POOS, Senior District Judge.*

POOS, Senior District Judge.

Detectives Lester Anderson and Lawrence Brewer of the East St. Louis Police Department, detached to the St. Louis Office for Drug Abuse Law Enforcement, initiated surveillance of a house in accord with a request by the East St. Louis Chief of Police. The residence, located at 741 North 31st Street, East St. Louis, Illinois, was surveilled during the hours of 11:30 a. m. to 9:30 p. m. on the date of January 31, 1973. Throughout this prolonged period the detectives observed several individuals arrive by car and then enter and depart the premises within an abbreviated period of time. On one occasion Anderson and Brewer followed an automobile whose passengers had just made such a visit to the residence in question. The automobile was subsequently stopped, the five passengers therein were frisked, but no incriminating evidence was discovered. Thereafter the officers returned to continue their observation of the house. This surveillance was later augmented by detectives and agents of the St. Louis DALE Office, the East St. Louis Police Department, and the Illinois Bureau of Investigation.

At 9:10 p. m. Detectives Anderson and Brewer, accompanied by two other officers, followed another car whose occupants had just made a brief visit to 741 North 31st Street, East St. Louis, Illinois. After following for some distance the vehicle was stopped for investigatory purposes, there being no evidence or testimony adduced at the hearing indicating a traffic violation or other criminal activity. As one of the passengers alighted from the car Anderson observed an envelope which was found to contain a green vegetable substance resembling marijuana. Upon questioning, the man stated that he had purchased the substance at 741 North 31st Street.

Thereafter Anderson and Brewer returned to the residence ostensibly to make a "buy and bust." They were accompanied by a number of officers to the front of the house, while other officers encircled and positioned themselves at the rear of the premises. Anderson and Brewer approached the front door and were admitted by an individual later identified as Calvin Cooks. Calvin Cooks was wearing a shoulder holster with the gun in place. Upon entering the detectives noticed one Willie G. Smith who was wearing an empty shoulder holster; Smith appeared to recognize Detective Anderson at which point a scuffle ensued with Anderson relieving Smith of his gun. Contemporaneous therewith three officers entered the front of the premises. One of these officers, James Walker, went throughout the remainder of the house and searched the premises. He proceeded to the kitchen where defendant Donald L. Cooks was seated at a table containing a number of envelopes, some green vegetable material and a .32 calibre pistol. As Walker entered the kitchen and confronted the defendant, Agents Culp and Bloemker of the St. Louis DALE Office entered through the rear door of the

---

* Senior District Judge Omer Poos of the Southern District of Illinois is sitting by designation.

house. Donald L. Cooks was arrested, the vegetable material was found to be marijuana.

Defendant, Donald L. Cooks, was subsequently charged in a one count indictment with knowingly and intelligently possessing with intent to distribute approximately 729 grams of marijuana in violation of Title 21 U.S.C. Sec. 841(a)(1). A pre-trial hearing was conducted pursuant to defendant's Motion To Suppress; the District Court Judge ruled that the evidence in question was seized in violation of the Fourth Amendment to the United States Constitution. The United States Government appeals that decision.

■■ It is evident from the above recital of facts that no search warrant was in existence at or prior to the entry of the premises in issue. The most basic principle in regard to the validity of governmental action of this type is that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357, 88 S. Ct. 507, 514, 19 L.Ed.2d 576. These exceptions are to be "jealously and carefully drawn," and there must be a demonstration by those who seek exemption that the exigencies of the situation made that course imperative. Jones v. United States, 357 U.S. 493, 496, 78 S.Ct. 1253, 2 L.Ed.2d 1514; McDonald v. United States, 335 U.S. 451, 456, 69 S.Ct. 191, 93 L.Ed. 153. The burden then is on those seeking exemption to show the need for it, and it is a "heavy" burden that must be met. United States v. Jeffers, 342 U.S. 48, 51, 72 S.Ct. 93, 96 L. Ed. 59; United States v. Gamble, 473 F.2d 1274, 1276 (7 Cir. 1973). As Mr. Justice Frankfurter stated in Wolf v. Colorado, 388 U.S. 25, 27–28, 69 S.Ct. 1359, 1361, 93 L.Ed. 1782:

"The security of one's privacy against arbitrary intrusion by the police—which is at the core of the Fourth Amendment—is basic to a free society. It is therefore implicit in 'the concept of ordered liberty' and as such enforceable against the States through the Due Process Clause. The knock at the door, whether by day or by night, as a prelude to a search, without authority of law but solely on the authority of the police, did not need the commentary of recent history to be condemned. . . ."

Hence the present search and seizure is to be condemned, unless it can be justified in some other way.

■ The theory put forth by the Government is that the evidence seized falls within the "plain view" doctrine as recognized and applied by the Supreme Court. Harris v. United States, 390 U. S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968) and Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). The primary requisite necessary for the application of the plain view doctrine is that the officer has a right to be where he is when he observes the evidence in plain view. In the instant case the Government contends that the admittance of Anderson and Brewer on the pretense of a "buy and bust" satisfies this first requirement. United States v. Welsch, 446 F.2d 220 (10th Cir. 1971). The present factual situation, however, somewhat belies the contention that the purpose was only to purchase evidence of a crime and not to arrest and search the persons and premises involved herein. The officers had first become aware of suspect criminal activity concerning 741 North 31st Street from information gained by the Chief of Police. The house was then surveilled from 11:30 a. m. to 9:30 p. m. during which time the officers gained additional information about the presence of drugs through interrogation of an individual who had just departed the premises. Finally, supplementary manpower from the St. Louis DALE Office, the East St. Louis Police Department, and the Illinois Bureau of Investigation were called in and surrounded the house

at the time of the purported "buy and bust". Never did they seek the protection of a warrant, no proper judicial officer was ever alerted to be available for its issuance. In its entirety the above conduct evinces a disregard for the fundamental requirement of a lawful search, a warrant executed on probable cause. As the Court put it in McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153:

"We are not dealing with formalities. The presence of a search warrant serves a high function. Absent some grave emergency, the Fourth Amendment has interposed a magistrate between the citizen and the police. This was done not to shield criminals nor to make the home a safe haven for illegal activities. It was done so that an objective mind might weigh the need to invade the privacy in order to enforce the law. The right of privacy was deemed too precious to entrust to the discretion of those whose job is the detection of crime and the arrest of criminals.

. . .

"And so the Constitution requires a magistrate to pass on the desires of the police before they violate the privacy of the home. We cannot be true to that Constitutional requirement and excuse the absence of a search warrant without a showing by those who seek exemption from the Constitutional mandate that the exigencies of the situation made that course imperative." Id at 455–456, 69 S.Ct. at 193.

It is enough to cite Agnello v. United States, 269 U.S. 20, 33, 46 S.Ct. 4, 6, 70 L.Ed. 145 (1925):

"Belief, however well founded, that an article sought is concealed in a dwelling house, furnishes no justification for a search of that place without a warrant. And such searches are held unlawful notwithstanding facts unquestionably showing probable cause."

■ If the authenticity of the "buy and bust" is assumed, the Government still has not sufficiently met its burden of bringing the instant search within

the realm of the plain view doctrine. The rationale of the plain view exception is evident if the two protections served by the Fourth Amendment warrant requirement are examined. First, the interposition of a magistrate is intended to eliminate searches not based on probable cause. The premise being that an intrusion in the nature of a search and seizure is an evil to be avoided, unless justified by a prior determination of necessity. See McDonald v. United States, supra, Katz v. United States, supra. The second objective is that those searches deemed necessary should be as limited as possible; this being accomplished by the admonishment of a "particular description" of the things to be seized. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), recognized that the plain view doctrine satisfied these objectives of the Fourth Amendment. The Court, however, also noted the inherent limitations that must be imposed on this exception to the warrant requirement:

"The limits on the doctrine [plain view] are implicit in the statement of its rationale. The first of these is that the plain view *alone* is never enough to justify the warrantless seizure of evidence. This is simply a corollary of the familiar principle discussed above, that no amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances.' Incontrovertible testimony of the senses that an incriminating object is on premises belonging to a criminal suspect may establish the fullest possible measure of probable cause. But even where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure." Id. at 468, 91 S.Ct. at 2039.

■ The second limitation imposed on the aforementioned doctrine which was discussed by the *Coolidge* Court is that the discovery of evidence in plain view must be inadvertent.

"But where the discovery is anticipated, where the police know in advance

the location of the evidence and intend to seize it, the situation is altogether different. The requirement of a warrant to seize imposes no inconvenience whatever, or at least none which is constitutionally cognizable in a legal system that regards warrantless searches as 'per se unreasonable' in the absence of 'exigent circumstances.'" Id. at 470, 91 S.Ct. at 2040.

In light of what has been said, it is apparent that the plain view exception cannot justify the police seizure of the marijuana in this case. The Government has demonstrated no circumstances other than the plain view of the evidence itself upon which to bottom its warrantless search, nor have they satisfied the requisite limited scope of this doctrine in that the police searched every room in the house before seizing the incriminating substance.

The second Governmental theory propounded to validate the instant search is that under the circumstances the officers and agents had a right to make a "protective sweep" of the area. Apparently with this argument the Government ceases to characterize police conduct as constituting a "buy and bust", for they do not contend that an individual entering a private residence to purchase goods, albeit contraband, may make a "protective sweep" throughout the entire premises. Although not explicitly argued, it is a fair inference that with the immediate failure of the police to procure the items sought, the subsequent events had the effect of converting their conduct into an arrest with the alleged concomitant right to conduct a protective sweep.

The controlling principles of a search incident to an arrest are set forth in Chimel v. California, 395 U.S. 752, 762, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969):

"When an arrest is made . . . There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which

he might gain possession of a weapon or destructible evidence. There is no comparable justification, however, for routinely searching any room other than that in which an arrest occurs. . . ."

It is readily apparent that the instant factual situation falls well without the proper scope of a search incident to an arrest as explicated in Chimel, supra. The Government attempts to obviate this result by setting forth exigent circumstances. The encounter of two men with shoulder holsters and guns coupled with the mere possibility that others might be present in the house are offered as justifying the officers subsequent search of the premises in its entirety. It is sufficient to say that a substantially stronger showing of exigent circumstances was made in United States v. Gamble, 473 F.2d 1274 (7 Cir. 1973), which this Court rejected. In conformity therewith the Government must show considerably more than it has to justify a search beyond Chimel limits.

Therefore, the order of the District Court suppressing the evidence as in violation of the Fourth Amendment to the United States Constitution is hereby affirmed.