James WILLIAMS, Appellant,

v.

STATE of Indiana, Appellee.

No. 3-1277A330.

Court of Appeals of Indiana, Third District.

Dec. 20, 1979.

Charles F. Leonard, Fort Wayne, for appellant.

Theo. L. Sendak, Atty. Gen., Kenneth R. Stamm, Deputy Atty. Gen., Indianapolis, for appellee.

HOFFMAN, Judge.

In a trial to the court, Williams was found guilty of the unlawful possession of heroin and sentenced to a term of five years in prison. The sole issue presented in this appeal is whether the trial court erred when it overruled Williams' motion to suppress the heroin as the fruit of an illegal search.

On February 8, 1974, at approximately 9:00 P.M., six police officers went to the residence of Williams and one Beverly Smith in order to serve a warrant for Smith's arrest. Three of the officers went to the rear of the residence and knocked at the door. When Smith answered she held a paring knife in her hand. The officers asked Smith to put the knife down, which she did. Upon being informed that there was another person in the house, two officers, Colby and York, proceeded to walk through the house to check for other persons who might have firearms or other weapons which might endanger their safety. In so doing they discovered Williams cutting heroin in the bedroom. Williams stood up and abruptly moved toward Officer Colby, but Colby leveled his gun at Williams and ordered him to stop.

Meanwhile, another officer, Roberts, had taken up a position at the front of the house in order to prevent anyone from escaping from the house. Next to the front door was a window with its shade almost completely drawn. Roberts bent over and looked through the waist-high, three-inch gap between the bottom of the shade and the window frame. When he did so he was able to see Williams cutting heroin in the bedroom. Moments later York opened the front door and Roberts informed him of his observations, but not before Colby had entered the bedroom and discovered Williams himself.[1]

On these facts Williams argues that the heroin discovered by the officers is inadmissible as the product of an illegal search. In support of that argument he relies on the rule in *Chimel v. California* (1969), 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685, which limits the scope of a search incident to an arrest to the person of the arrestee and the area within his immediate control.

But the rule in *Chimel* is not without exception. This Court has recently held that police officers may justifiably enter areas of a house other than that where an arrest occurs when they have reason to believe that other persons on the premises may pose a threat to their safety. *See: Ingle v. State* (1978), Ind.App., 381 N.E.2d 887.

Other courts have reached similar conclusions in such situations. *See: U. S. v. Broomfield* (E.D.Mich., 1972), 336 F.Supp. 179; *People v. Mann* (1969), 61 Misc.2d 107, 305 N.Y.S.2d 226. Indeed, a protective search of areas within the control of persons *other* than the arrestee was upheld in *U. S. v. Manarite* (S.D.N.Y., 1970), 314 F.Supp. 607, *affirmed* 448 F.2d 583 (2nd Cir., 1971), *cert. den.* 404 U.S. 947, 92 S.Ct. 287, 30 L.Ed.2d 264. *But see: U. S. v. Gamble*, 473 F.2d 1274 (7th Cir., 1973); *U. S. v. Cooks*, 493 F.2d 668 (7th Cir., 1974).

This is a case where such protective measures were reasonable, and the court below so found. According to the testimony of Officer Colby, he and his partner had previously experienced problems posed by persons whose presence was unknown to them at the time they sought to make arrests. As a result Colby thought it necessary, upon learning of Williams' presence, to locate him in order to prevent any threat to the personal safety of himself and the other officers. This evidence, the credibility of which this Court cannot weigh on appeal, plainly establishes circumstances permitting a protective sweep of the house. *U. S. v. Manarite, supra.* Consequently, the court below committed no error when it concluded that the officers properly entered the bedroom and seized the heroin which was in plain view.

It is necessary to emphasize, however, as did the courts in *Broomfield, supra,* and *People v. Block* (1971), 6 Cal.3d 239, 103 Cal.Rptr. 281, 499 P.2d 961, that had the officers been conducting an evidentiary search rather than a limited protective sweep when they discovered the incriminating evidence, their actions would have exceeded the bounds of *Chimel.* Under such circumstances the seized evidence would be rendered inadmissible. But such a search was not conducted in this case; rather, the heroin was discovered during the course of the protective sweep *before* Officer Colby learned that a fellow officer had observed Williams cutting the heroin by peering through the bedroom window.

Accordingly, the judgment below is affirmed.

Affirmed.

GARRARD, P. J., concurs.

STATON, J., dissents with opinion.

STATON, Judge, dissenting.

I agree that police officers may justifiably conduct a protective sweep of areas of a house other than the particular area where an arrest is made when they have

---

1. Because the heroin was admissible on the basis of Colby's discovery, it is unnecessary for this Court to decide whether Roberts' discovery alone would have been a sufficient basis for its admissibility.

reason to believe that other persons on the premises may pose a threat to their safety. The police officers' belief in the existence of the threat to their safety must, however, be based upon specific and articulable facts known to them at the time the protective sweep is initiated.

The circumstances of the case before us did not warrant a protective sweep. For while Officer Colby did have reason to believe that there was another person on the premises, he had no reason to believe that that person was a threat to his safety. Accordingly, I dissent.

The majority opinion relies exclusively on the following "evidence" in concluding that Officer Colby, as he stood in the kitchen, had reason to believe that other persons on the premises might pose a threat to his safety: (1) Officer Colby had previously experienced problems effecting arrests; (2) Officer Colby was informed of the presence of another person; and (3) Officer Colby "thought it necessary" to locate that person.[1]

The fact that Officer Colby had experienced problems with different people at different locations on different occasions is in no way logically or legally relevant to the matter in dispute. While the previous problems may have given Officer Colby reason to be alert, they did not give him reason to believe that he would experience similar problems at Williams' house.

The fact that Officer Colby was informed of the presence of another person shows only that he had reason to believe that another person was present. It does not show that Officer Colby had reason to believe that the person was a threat to his safety.

Similarly, Officer Colby's conclusory opinion that he "thought it necessary" to locate Williams is nothing more than an "inarticulate hunch," and our courts have consistently refused to sanction police searches based merely on such hunches.

The majority opinion thus explicitly sanctions protective sweeps whenever an arrest is made at a house and the police are told that another person is present. The implications and ramifications of that holding are shocking. The justification for a protective sweep is that it allows the police to protect themselves against attacks from persons in rooms other than that where the arrest is made. Are the police in any less danger or is the threat of such attacks any less when the police are not informed of the presence of other persons? Wouldn't the police, because of the element of surprise, actually have been in more danger if Smith had not advised them of Williams' presence? The rationale of the majority opinion, then, would allow protective sweeps whether or not the police had knowledge of the presence of other persons.

And what are the limits of the protective sweeps? Presumably the police will be allowed, for example, to open doors and check closets, because someone who might be hiding in a closet and might have a gun is just as potentially dangerous as someone who might be standing in the middle of a room and might have a gun.

The majority opinion, therefore, obliquely sanctions the canvassing of an entire house whenever the police make an arrest at the house. I cannot concur in the carte blanche which the majority opinion bestows upon the police or in the resulting emasculation of the Fourth Amendment.

The State's argument that the heroin was discovered in plain view by the officer who peered into the bedroom window must also fail.

In order to properly invoke the plain view doctrine, the officer discovering the evidence must have rightfully been in the position where he had that view. *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564. And while the discovery of evidence in plain view does not, in and of itself, constitute a search, *Alcorn v. State* (1970), 255 Ind. 491, 265 N.E.2d 413,

---

1. I do not read the majority opinion as attaching any significance to the fact that Smith was holding a knife when she answered the door.

She was using the knife to prepare dinner . . . a fact that the police became aware of as they entered the kitchen.

very often the conduct of the officer which puts him in a position to make the discovery does constitute a search. In those instances, the legality of the plain view seizure is dependent upon the validity of the search.

The test for determining whether the police conduct in question constitutes a search is whether that conduct violated the defendant's reasonable expectation of privacy. *Katz v. United States* (1967), 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576. The conduct of the officer who originally took a position at the front door consisted of leaving the area of the front door, walking around the house, approaching a window and then bending over and peering through a waist-high three-inch gap between the bottom of the almost completely-drawn window shade and the window sill. Clearly, that conduct constituted a search. Because that search was not conducted pursuant to a warrant and because the circumstances do not fit into one of the exceptions to the warrant requirement, the seizure of the heroin cannot be justified as having been discovered in plain view by that officer.

The motion to suppress should have been granted.