[No. 46750. En Banc. November 26, 1980.]

THE STATE OF WASHINGTON, *Respondent,* v. NEIL MARTIN CHRISMAN, ET AL, *Petitioners.*

*Aitken, Schauble, Patrick, Neill & Charawell,* by *Robert F. Patrick,* for petitioner Chrisman.

*Stephen Bishop,* for petitioner Overdahl.

*Ronald R. Carpenter, Prosecuting Attorney,* and *Gerald R. Fuller, Deputy,* for respondent.

DOLLIVER, J.—Defendants Carl Overdahl and Neil Chrisman, students at Washington State University, were tried without a jury and convicted of possession of more than 40 grams of marijuana, a felony. Chrisman was also convicted of possession of lysergic acid diethylamide (LSD). Both defendants appealed and the Court of Appeals affirmed their convictions. *State v. Chrisman,* 24 Wn. App. 385, 600 P.2d 1316 (1979). They then petitioned this court for review. The charges against Overdahl, however, were subsequently dismissed, and he withdrew his petition for discretionary review. We accepted review of Chrisman's conviction (93 Wn.2d 1009 (1980)), and reverse.

On the evening of January 21, 1978, defendant Overdahl, carrying a half gallon of gin, walked out of Orton Hall at Washington State University with several student friends on their way to a party. At that moment, Officer Daugherty of the University police department arrived at the dormitory to investigate an unrelated matter. The officer noticed the bottle of gin and suspected that Overdahl was under the age of 21. He stopped Overdahl and requested his identification. Overdahl stated that he would have to go upstairs to his room to get the identification. Officer Daugherty replied that he would have to accompany him to his room. As they were waiting for the elevator, the officer asked Overdahl how old he was. Overdahl responded that he was 19.

Upon arriving on the 11th floor of the dormitory, Officer Daugherty followed Overdahl down the hallway to his room. Overdahl pushed open the slightly ajar door and entered the approximately 17– by 11–foot room. The officer stood in the open doorway and noticed that the room was occupied by another student, defendant Neil Chrisman. Officer Daugherty testified that Chrisman appeared visibly nervous upon seeing the police officer.

After watching the occupants for a few minutes, Officer Daugherty observed seeds and a small pipe lying on a desk 8 to 10 feet from where he was standing. He recognized the pipe as the type used for marijuana, and proceeded to examine the seeds and the pipe more closely.

Concluding that the seeds were marijuana and that the pipe smelled of marijuana, Officer Daugherty gave the two students their *Miranda* rights. Both Overdahl and Chrisman indicated they understood their rights and were willing to waive them. The officer then asked them if they had other drugs in the room and Chrisman handed him a small box containing three small plastic bags of marijuana.

Officer Daugherty radioed for assistance and Officer Kenny arrived shortly thereafter. Officer Kenny informed the defendants that a search of their room was necessary. He explained that they had an absolute right to demand that the police obtain a search warrant which would take about 2 hours, or alternatively they could consent to a search of their room. He further explained that their consent must be voluntary and that they had a right to refuse consent. After conferring in whispers, Overdahl and Chrisman agreed to the search. Prior to signing written consent to search forms, defendants were again advised of their rights under *Miranda*. A search of the room yielded more marijuana and also LSD.

Chrisman and Overdahl were charged by amended information with one count of possession of more than 40 grams of marijuana. Chrisman was also charged with a second count of possession of LSD. Prior to trial, a suppression hearing was held and defendants moved to suppress all evidence on the basis that the evidence was obtained as a result of an illegal search and seizure. The trial judge denied the motion. Defendants were tried without a jury and convicted as charged.

■ Chrisman contends that Officer Daugherty's initial warrantless examination of the seeds and the pipe amounted to an unconstitutional search and that the evidence seized should have been suppressed. We agree.

[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well–delineated exceptions.

(Footnote omitted.) *Katz v. United States,* 389 U.S. 347, 357, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967); *State v. Daugherty,* 94 Wn.2d 263, 616 P.2d 649 (1980). Since Officer Daugherty had no warrant when he entered Chrisman's and Overdahl's room, the search was proper only if it fell within one of the "jealously and carefully drawn" exceptions to the warrant requirement of the Fourth Amendment. *Jones v. United States,* 357 U.S. 493, 499, 2 L. Ed. 2d 1514, 78 S. Ct. 1253 (1958); *State v. Daugherty, supra.*

■■ The State asserts that the seizure of the marijuana seeds and pipe was permissible under the "plain view" exception to the warrant requirement. This exception permits warrantless seizure of incriminating evidence discovered in a search of a given area for other specified items pursuant to a valid warrant, or discovered inadvertently after an intrusion otherwise excepted from the warrant requirement. *Coolidge v. New Hampshire,* 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971); *State v. Daugherty, supra.*

The plain view exception will apply only if the following requirements are met: (1) a prior justification for intrusion; (2) inadvertent discovery of incriminating evidence; and (3) immediate knowledge by the officer that he had evidence before him. *State v. Daugherty, supra; State v. Murray,* 84 Wn.2d 527, 527 P.2d 1303 (1974), *cert. denied,* 421 U.S. 1004, 44 L. Ed. 2d 673, 95 S. Ct. 2407 (1975); *State v. Dimmer,* 7 Wn. App. 31, 33, 497 P.2d 613, *review denied,* 81 Wn.2d 1003 (1972). The burden falls on the State to show that a warrantless search falls within the plain view exception to the warrant requirement. *See Arkansas v. Sanders,* 442 U.S. 753, 61 L. Ed. 2d 235, 99 S. Ct. 2586 (1979); *State v. Daugherty, supra.* A greater burden is placed on officials who enter a home or dwelling without a warrant. The

"'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'" *Payton v. New York,* 445 U.S. 573, 585, 63 L. Ed. 2d 639, 100 S. Ct. 1371, 1380 (1980), quoting *United States v. United States District Court,* 407 U.S. 297, 313, 32 L. Ed. 2d 752, 92 S. Ct. 2125 (1972).

Some argument is made by defendant that in fact Officer Daugherty was not in the room at the time he observed the seeds and pipe but was standing only in the doorway. The record is in conflict as to whether Officer Daugherty stood in the doorway and then entered the room or whether, while in the doorway, he was in fact in the room. We need not, however, let the result be determined by such niceties. The police officer was in the room at the time he observed the seeds and pipe. The question is: Did he have a right to be there?

We begin by stating the trial court correctly determined Overdahl had been placed under arrest at the time he was apprehended outside Orton Hall carrying the bottle of gin. Overdahl continued to be under arrest when he was accompanied to his room by Officer Daugherty. As the State observes, there was nothing to prevent Officer Daugherty from accompanying Overdahl to his room. Simply because Overdahl was under arrest, however, did not give Officer Daugherty the right to enter the room and, upon seeing the seeds and pipe, to conduct a search—all without a warrant.

One of the difficulties in this case results from the fact that the focus has been on the marijuana rather than the alcohol. But, as the State claimed and the trial court concluded, we concur that the entry into the room was connected with the arrest for possession of alcohol by a minor, and not the possession of marijuana. Once Officer Daugherty entered the room as he followed up on the alcohol arrest, the validity of his observation of the seeds and pipe and the subsequent search depends on the constitutionality of the original entry.

■ The United States Supreme Court has consistently held a contemporaneous search is justified by such exigent circumstances as,

> the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime—things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control.

*Chimel v. California,* 395 U.S. 752, 764, 23 L. Ed. 2d 685, 89 S. Ct. 2034 (1969), quoting from *Preston v. United States,* 376 U.S. 364, 367, 11 L. Ed. 2d 777, 84 S. Ct. 881 (1964). This case does not fit under the contemporaneous search exceptions.

It is clear from the testimony of Officer Daugherty that the only reason he accompanied Overdahl to the room was so that Overdahl could get his identification. Officer Daugherty said at the time he stopped Overdahl he "believed that I had a minor in possession" and that Overdahl could not go to his room alone to get the identification "because we just don't release people from custody." The arrest of Overdahl was for a minor in possession of alcoholic beverages. There is absolutely no evidence that it was necessary for Officer Daugherty to enter the room to seize a weapon which might be used in an assault, that the bottle of gin was about to be destroyed, or that Overdahl was going to attempt an escape. It was a small room. Officer Daugherty was standing in the one exit, and it was on the 11th story. It was not necessary for the officer to enter the room to make certain Overdahl secured his identification. No exigent circumstances existed to justify this intervention; nor were any claimed by the State.

The circumstances were insufficient to justify an intrusion into Chrisman's room, and therefore the first prong of the plain view doctrine has not been met. Accordingly, there is no need to determine whether the final two requirements have been fulfilled as all three elements must be met before the plain view doctrine applies. *See State v.*

*Daugherty, supra.* The seeds and the pipe were products of an unlawful search, and the motion to suppress the evidence should have been granted.

■ The marijuana and LSD seized after Chrisman and Overdahl consented to a search of their room also should have been suppressed. Evidence obtained through exploitation of an illegal search is not admissible. *United States v. Crews,* 445 U.S. 463, 63 L. Ed. 2d 537, 100 S. Ct. 1244 (1980); *Wong Sun v. United States,* 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963). Defendants' consent to search the room following the seizure was voluntary only if obtained "by means sufficiently distinguishable to be purged of the primary taint" rather than "by the exploitation of that illegality" (*Wong Sun,* at 488), such as when a significant intervening event or a considerable lapse of time separates the two. *Wong Sun,* at 485–91; *State v. Byers,* 88 Wn.2d 1, 8, 559 P.2d 1334 (1977). *See United States v. Crews, supra.*

In the present case, the causal chain is short and unbroken. There was no lapse of time or significant intervening event between the unconstitutional entry into the room and Chrisman's consent to search. We hold defendant's consent was the product of an illegal search and thus involuntary. All of the contraband seized must be excluded.

Reversed.

UTTER, C.J., and ROSELLINI, HICKS, and WILLIAMS, JJ., concur.

BRACHTENBACH, J. (dissenting)—I dissent. The officer had in custody an admitted minor in possession of alcohol. The minor initiated the journey to his room to obtain identification.[1]

---

[1]This is not a case where the police arrested a defendant outside his home and then took him inside for the purpose of conducting a warrantless search of his dwelling. *Shipley v. California,* 395 U.S. 818, 23 L. Ed. 2d 732, 89 S. Ct. 2053 (1969).

The majority holds that the plain view exception fails because the officer did not have a prior justification for the intrusion. What the majority fails to explain convincingly is why the officer was not entitled to keep the arrested person within his sight. The majority's conclusion does not rest upon any cited authority, but only upon its bare assertion. That conclusion is inconsistent with existing precedent, which indicates the officer was entitled to be where he was. Given this right, all elements of the plain view doctrine were satisfied.[2]

*State v. Brown,* 132 N.J. Super. 180, 333 A.2d 264 (1975), is precisely on point and contrary to the majority. Defendant was arrested in a motel parking lot on drug charges, and asked if he could go to his motel room to get his jacket. The police consented and accompanied defendant to his room. Upon entry, the police observed in plain view what they believed to be illegal drugs. The appellate division held that the drugs were admissible because considerations of police safety and prevention of a possible escape gave the police the right to enter defendant's room. The possibility of escape was admittedly remote in the present case, but concern for police safety was no less compelling than in *Brown.*

Other cases indicate that if a defendant is arrested at his dwelling and asks for access to some other room, the police may search that room before or after granting his request. *United States v. Mason,* 523 F.2d 1122, 1126 (D.C. Cir. 1975); *United States v. Wright,* 577 F.2d 378, 381 (6th Cir. 1978); *United States v. DeMarsh,* 360 F. Supp. 132, 137 n.4 (E.D. Wis. 1973); *see* Kelder, *Criminal Procedure,* 30 Syracuse L. Rev. 15, 68 (1979). If Officer Daugherty had the right to search defendant's room, he obviously had the right to enter it.

---

[2]The majority correctly notes that the plain view doctrine is applicable only if the police inadvertently observe what they immediately know is evidence from a place they are entitled to be. The "inadvertence" and "immediate knowledge" requirements were clearly satisfied in this case.

A host of cases hold that if a defendant is arrested at his dwelling, and is allowed to go to another part of it for some purpose, the police may accompany the defendant there and any evidence they inadvertently observe is admissible under the plain view doctrine. *See, e.g., United States v. Di Stefano,* 555 F.2d 1094, 1101 (2d Cir. 1977) (officer could accompany defendant to another room "to maintain a 'watchful eye' on her and to assure that she did not destroy evidence or procure a weapon"); *Moffett v. State,* 291 Ala. 382, 281 So. 2d 630 (1973), *cert. denied,* 414 U.S. 1161, 39 L. Ed. 2d 114, 94 S. Ct. 924 (1974); *People v. Stevens,* 38 Cal. App. 3d 66, 113 Cal. Rptr. 49 (1974); *People v. Green,* 14 Ill. App. 3d 972, 304 N.E.2d 32 (1973), *cert. denied,* 417 U.S. 972, 41 L. Ed. 2d 1143, 94 S. Ct. 3179 (1974); *People v. Mann,* 61 Misc. 2d 107, 113, 305 N.Y.S.2d 226 (1969) ("certainly reasonable" for police to accompany defendant to bedroom and "keep him under continuous surveillance while he was putting on his clothing"); 2 W. LaFave, *Search and Seizure* § 6.4, at 420–21 (1978).

In all of the cases cited above, except *Brown,* the defendant was allowed to move about after being arrested in his dwelling, as contrasted to being arrested outdoors as in the present case. This is not a difference of constitutional magnitude which distinguishes the cited cases from the present case. The focus of those cases was not on the locus of arrest, but rather on the reasonableness of searching the room an arrestee requests to enter, or the reasonableness of accompanying an arrestee when he is permitted to move about his dwelling. The rationale of those cases (concern for police safety, avoiding possible destruction of evidence, and discouraging potential escape attempts), which found such police conduct reasonable, is equally persuasive when an arrestee outside his dwelling requests to enter it. As the arrestee moves about of his own volition, whether from one area of his dwelling to another or from outside his dwelling to inside it, the right of the police to make plain view seizures must necessarily expand correspondingly. *See* Kelder,

*supra* at 68; *United States v. Griffith,* 537 F.2d 900, 905 (7th Cir. 1976); *United States v. Mason,* 523 F.2d 1122, 1125–26 (D.C. Cir. 1975) (by implication). I would hold that, as a general rule, "[w]here a person in custody asks to be given access to an area, he has no basis to object that the arresting officers" (*Mason, supra* at 1126) accompany him to that area and keep him in view.

The officers meticulously observed the defendants' *Miranda* rights and advised both defendants of their absolute right to require a search warrant. They were advised that their consent must be voluntary and that they had a right to refuse consent. After conferring, the defendants consented to the search.

I would affirm the decisions of the trial court and the Court of Appeals.

STAFFORD and HOROWITZ, JJ., concur with BRACHTEN-BACH, J.

Reconsideration denied December 31, 1980.