## COMMONWEALTH *vs.* LEE DUBOIS.

No. 96-P-1841.

Bristol. November 13, 1997. - February 13, 1998.

Present: WARNER, C.J., DREBEN, & FLANNERY, JJ.

*Probable Cause. Search and Seizure,* Probable cause, Exigent circumstances. *Constitutional Law,* Search and seizure.

Police officers lawfully entered a garage bay to apprehend and arrest a person who had, as the officers approached and identified themselves, dropped a clear plastic bag containing white powder and run into the garage; however, nothing in the record of a hearing on a motion to suppress supported the judge's finding that the officers thereafter reasonably conducted a protective sweep of an adjoining garage bay. [295-297]

No probable cause supported police officers' warrantless entry into a garage bay, and evidence seized as a result of observations made therein should have been suppressed. [297-298]

INDICTMENT found and returned in the Superior Court Department on October 14, 1993.

A pretrial motion to suppress evidence was heard by *John M. Xifaras,* J., and the case was heard by *Richard J. Chin,* J.

*Jane Larmon White,* Committee for Public Counsel Services, for the defendant.

*David B. Mark,* Special Assistant District Attorney, for the Commonwealth.

FLANNERY, J. The defendant was indicted for trafficking in cocaine in an amount more than twenty-eight grams but less than fifty grams. A Superior Court judge denied the defendant's motion to suppress evidence found during a warrantless search. The defendant was found guilty, after a jury-waived trial, and sentenced to not less than six nor more than nine years at the Massachusetts Correctional Institution at Cedar Junction. The defendant appeals, and we reverse.

The facts taken from the motion judge's findings and other

undisputed evidence are as follows. On September 27, 1993, police officers from the Fall River police department arrived at 100 Niagra Street to execute a search warrant for the second floor west apartment, the residence of Corrine Skelly. Their knock on the door was not answered, so they left. As the officers left the building and walked to their cars, they saw Skelly and Charles Hallal, who were both known to the police from previous investigations, walking out of a garage located across the street. The officers approached them and identified themselves as police officers. Hallal dropped a clear plastic bag that contained white powder which, based on their experience, the officers inferred to be drugs. Upon dropping the bag, Hallal ran toward the garage and was pursued by two officers. Hallal entered the garage, was stopped within five feet of the door, and placed under arrest.

While they were placing Hallal under arrest, the officers heard a voice calling, "Charlie, is that you? Charlie, is that you?" from the adjacent bay area of the garage. They made no response to the voice but walked through an open doorway and into the adjacent garage bay, which was separated from the first bay area by a floor to ceiling wall running the length of the building. The voice was coming from a parked camper in the adjacent bay. The officers walked to the open door of the camper, looked inside, and saw the defendant lying across a bed with scales and packages containing white powder. The officers identified themselves, entered the camper, briefly struggled with the defendant, and placed him under arrest.[1]

At trial, a detective testified that the white powder retrieved from the camper was analyzed and found to contain 39.56 grams of thirty percent pure cocaine.

We agree with the Commonwealth, as did the motion judge, that there were both probable cause and exigent circumstances justifying the officers' initial warrantless entry into the garage.[2] See *Commonwealth* v. *Franklin*, 376 Mass. 885, 899 (1978).

---

[1]The evidence at the motion hearing did not show a tenancy or invitee relationship between Hallal and the defendant. The defendant was renting "his" bay from one Silva, the lessee of the garage.

[2]The defendant maintains that the initial entry into the first garage bay, where he had an expectation of privacy, was unlawful and his words were the fruit of this entry. The Commonwealth argues that the defendant had no expectation of privacy in the first bay and, therefore, no basis to challenge the initial entry. We conclude that, even if the defendant had standing and an

The officers saw Hallal drop a bag and flee as they approached him and identified themselves. Such conduct provided the officers with probable cause to apprehend and arrest him. That the police were in pursuit of Hallal was sufficient exigency.

We turn to the motion judge's findings and rulings on the search conducted by the officers once they were inside the garage. The judge ruled that the officers were justified in investigating the unknown voice calling to the defendant from the neighboring garage bay for safety reasons. The drugs and drug paraphernalia seen by the police during the protective sweep were held to be in plain view and, therefore, the seizure was found to be proper. We disagree.

The Fourth Amendment permits a "quick and limited search of premises, incident to an arrest[, when] conducted to protect the safety of police officers and others." *Maryland* v. *Buie*, 494 U.S. 325, 327 (1990). The searching officers, however, must "possess[] a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant[]' the officer[s] in believing, that the area swept harbored an individual posing a danger to the officer[s] or others." *Id.*, quoting from *Michigan* v. *Long*, 463 U.S. 1032, 1049-1050 (1983), quoting from *Terry* v. *Ohio*, 392 U.S. 1, 21 (1968). The presence of a person, therefore, without a reasonable basis for suspecting that the person poses a danger to police or others is insufficient to justify a protective sweep of the premises. Compare *Williams* v. *State*, 397 N.E.2d 1088, 1089 (Ind. Ct. App. 1979) (pre-*Buie* view that mere presence was sufficient to warrant reasonable belief that person could be a threat).

There is nothing in the record to suggest that the officers believed that such danger existed, or that they entered the second garage bay for that reason. Compare *Commonwealth* v. *Walker*, 370 Mass. 548, 556-558, cert. denied, 429 U.S. 943 (1976) (concluding that, in light of what the police observed and learned immediately on entering the apartment, they were justified in entering the bedroom to search for a person for the safety of themselves and the occupants of the apartment); *Commonwealth* v. *Bowden*, 379 Mass. 472, 478 (1980) (finding that a security check was reasonably believed to be necessary by the police to ensure their personal safety). See *Commonwealth* v.

---

expectation of privacy in the first garage bay, warrantless entry was supported by probable cause and exigent circumstances.

*Lewin (No. 1)*, 407 Mass. 617, 621 (1990) (in a murder case, police may conduct a protective sweep of the area to see if there are other victims or if a killer is still on the premises). In addition to there being no testimony that the search was motivated by a belief of danger, the officers' behavior precludes such a finding. As the judge found, after hearing the voice, the officers simply entered the adjacent area, observed that the voice emanated from a large camper parked in the garage, proceeded to the camper, and observed the defendant through an open door. There is no finding that weapons were drawn or other precautions taken during the search.

Accordingly, although we recognize that "whether an exigency existed, and whether the response of the police was reasonable and therefore lawful, are matters to be evaluated in relation to the scene as it could appear to the officers at the time, not as it may seem to a scholar after the event with the benefit of leisured retrospective analysis," *Commonwealth* v. *Young*, 382 Mass. 448, 456 (1981), the record does not support a finding of reasonable belief of danger when the officers themselves do not articulate this danger.

The Commonwealth, on appeal, abandons the protective sweep exception which it argued below and, instead, urges a different rationale for the actions of the police: they could enter the garage in pursuit of Hallal and, when they heard the defendant calling to Hallal, they had fresh probable cause to believe that the defendant was engaged in the distribution of cocaine and that any delay in confronting him would result in loss of evidence.[3]

The Commonwealth argues that the police had probable cause particularized to the defendant because they could reasonably infer, based on the totality of circumstances, that the defendant was the source of the drugs that Hallal discarded.[4] Even considering the events that led up to Hallal's arrest, we conclude

---

[3]We ordinarily do not address an issue raised for the first time on appeal. We do so in this case, however, because the prevailing party, the Commonwealth, is "entitled to argue on appeal that the judge was right for the wrong reason, even relying on a principle of law not argued below." *Aetna Cas. & Sur. Co.* v. *Continental Cas. Co.*, 413 Mass. 730, 734-735 (1992).

[4]In the alternative, the Commonwealth urges the application of the accomplice sweep exception to the warrant requirement. Although this exception has not been considered in Massachusetts, it has considerable appeal, assuming it has reasonable limits. See LaFave, Search and Seizure § 6.4(b)-(c) (3d ed. 1996). The doctrine, for instance, could be an alternative to the protective

that the defendant's voice calling, "Charlie, is that you? Charlie, is that you?" did not give police probable cause to conclude that the defendant was distributing drugs. The inference advanced by the Commonwealth is too speculative to have probative value. See *Commonwealth* v. *Wooden*, 13 Mass. App. Ct. 417, 421 (1982).

The order denying the defendant's motion to suppress is vacated, and the case is remanded to the Superior Court for entry of an order allowing the motion. The judgment is reversed, and the finding of guilty is set aside. Judgment is to enter for the defendant.

*So ordered.*

---

sweep exception if there is a basis to seek out accomplices but not a basis for acting in the interest of self-protection. The standard applied by courts recognizing this exception appears to parallel the protective sweep, in that, once police have lawfully entered a premises and made an arrest therein, something less than the usual quantum of probable cause suffices to justify a limited additional intrusion to investigate the possible presence of accomplices. *Id.* at 320, citing *Guevara* v. *Superior Court*, 7 Cal. App. 3d 531 (1970).

Even if we were to adopt the accomplice sweep exception, the record here lacks evidence to support a reasonable belief that the defendant was Hallal's accomplice in crime. Compare *United States* v. *Weber*, 518 F.2d 987 (8th Cir. 1975), cert. denied sub nom. *Rich* v. *United States*, 427 U.S. 907 (1976) (police were informed that three people were involved in setting up drug manufacturing lab; after observing two individuals leaving basement through an outside door, police properly entered basement to ascertain whether other individuals were hiding); *State* v. *McCollum*, 527 S.W.2d 710 (Mo. Ct. App. 1975) (police knew that husband and wife had together committed sex crimes on victim in their home; therefore, after husband was arrested at front door, police properly searched premises for wife). Hence, we do not have occasion on the present record to adopt or reject an accomplice sweep exception.