## State of Connecticut *v.* Carlson Shaw

Speziale, C. J., Peters, Healey, Parskey and Wright, Js.

Argued November 4, 1981—decision released January 12, 1982

*Bruce A. Sturman,* assistant public defender, with whom, on the brief, was *Jerrold H. Barnett,* public defender, for the appellant (defendant).

*John F. Cronan,* deputy assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, *Richard L. Shiffrin,* assistant state's attorney, and *Maryann S. Perry,* deputy assistant state's attorney, for the appellee (state).

PETERS, J. This is an appeal from a conviction of the crime of risk of injury to a child. Upon a trial to a jury, the defendant, Carlson Shaw, was found guilty of violating General Statutes § 53-21 by acting "in a manner likely to impair the health or morals of a child under the age of sixteen years . . . ." [1] The defendant's appeal raises two claims of error, one arising out of the admission of certain testimony at the trial, and one arising out of the trial court's charge to the jury.

The jury might reasonably have found the following facts: In the middle of the afternoon on February 28, 1977, the victim, a six year old boy, was walking home from school. He was invited by a male to enter a neighboring house. Once inside, he was taken into a first floor apartment, stripped of his clothes, and sexually molested. When he returned home, several hours later, he told his mother what had happened and she called the New Britain police. In his report to the police the boy

---

[1] "[General Statutes (Rev. to 1977)] Sec. 53-21. INJURY OR RISK OF INJURY TO, OR IMPAIRING MORALS OF, CHILDREN. Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

The defendant had originally been charged as well with violation of General Statutes § 53a-72a (a) (2), sexual assault in the third degree, but this count was withdrawn by the state at the end of the trial.

described, with some particularity, the furnishings of the rooms of the apartment where the incident had occurred.

The New Britain police detective who was called to investigate the crime took the boy and his mother to the police station. On the way there, the boy pointed out the house where he had been molested. Two police detectives then went back to the designated house and were permitted to enter the first floor apartment, where they confronted the defendant and his mother. The defendant agreed to accompany the detectives, at their request, to the police station. One of the detectives followed the defendant to the rear of the apartment when the defendant went there to get street shoes.

At the police station, the boy was able to view the defendant through a one-way mirror and identified the defendant as his assailant. The boy again identified the defendant in the course of his testimony at the trial.

## I

The defendant's first claim of error arises out of the conduct of the police detectives who arrested him at his apartment. Although the defendant does not challenge the legality of his arrest, he maintains that the police could not, without a warrant, absent exigent circumstances, obtain visual evidence of the contents of the back room of his apartment. In accompanying the defendant while he got his shoes, the detective, it is argued, unconstitutionally seized significant evidence of the crime, because the detective's visual observation of the premises enabled him to corroborate the description of the premises previously given by the boy.

The defendant concedes that this claim was not properly raised in the trial court. Although defense counsel had objected to the admission of this corroborative evidence, the ground then stated was that the proffered evidence was overly expansive. The defendant does not now press that objection, which was overruled by the trial court. Instead, the defendant relies on the bypass principles of *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973), asserting that he has "been deprived of a fundamental constitutional right and a fair trial." We are by no means persuaded that the *Evans* exception applies to this case. The resourcefulness exhibited by the defendant's theory that there was an unconstitutional search does not, ipso facto, obviate the normal requirement of a proper objection upon relevant grounds in the trial court.

Although we might well dispose of the defendant's claim on this procedural basis alone, we will briefly indicate why the claim lacks substantive merit as well. Even if we were to concede, arguendo, that a visual observation can constitute a "search and seizure" for the purposes of the fourth and fourteenth amendments to the United States constitution and article first, § 7, of the Connecticut constitution, any such "search" in this case was clearly lawful as incident to a lawful arrest. It is not constitutionally impermissible to accompany a person under arrest to another part of his premises to forestall his access to weapons or to prevent his escape. Under *Chimel* v. *California,* 395 U.S. 752, 763, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969), and *State* v. *McClain,* 171 Conn. 293, 297–98, 370 A.2d 928 (1976), an arresting officer has the right to search the area within the immediate control of the defendant. The permissible area of "search" cannot reasonably be

confined to the particular room in which the arrest occurs if the defendant himself voluntarily goes to another part of the premises. See *United States* v. *Mason,* 523 F.2d 1122, 1125–26 (D.C. Cir. 1975); *State* v. *Onofrio,* 179 Conn. 23, 39, 425 A.2d 560 (1979); *State* v. *Krause,* 163 Conn. 76, 83–84, 301 A.2d 234 (1972); and see 2 LaFave, Search and Seizure, A Treatise on the Fourth Amendment (1978) § 6.4 (a). The defendant suggests that the police might have limited their search area, and protected his privacy, by asking his mother to get his shoes from the back room. Suffice it to say that the defendant, had he wished to preserve the privacy of the back room, could himself have asked for his mother's assistance. In the circumstances of this case, we find no unconstitutional intrusion upon the defendant and no merit in his first claim of error.

## II

The defendant's alternate claim of error urges that he is entitled to a new trial because the trial court failed to honor his request to instruct the jury that sexual assault in the fourth degree is a lesser included crime of risk of injury to a child. The trial court based its refusal to honor this request on the presence of an element of the crime alleged to be lesser included that is not an element of the greater crime. This extra element is the requirement that sexual assault, under General Statutes § 53a-73a,[2] must be committed "intentionally."

---

[2] General Statutes (Rev. to 1977) § 53a-73a provides, in relevant part: "SEXUAL ASSAULT IN THE FOURTH DEGREE: CLASS A MISDEMEANOR. (a) A person is guilty of sexual assault in the fourth degree when: (1) Such person intentionally subjects another person to sexual contact who is (A) under fifteen years of age, or (B) mentally defective, mentally incapacitated or physically helpless, or (C) such other person is less than eighteen years old and the actor is such person's guardian or otherwise responsible for the general

Before we reach the merits of this comparison between the crime of risk of injury and the crime of sexual assault in the fourth degree, we must determine by what standards to measure the existence of a lesser included offense. Since 1980, this court has laid out a four-prong test, looking both to the terms of the information or bill of particulars and to the evidence presented at the trial. *State* v. *Whistnant*, 179 Conn. 576, 588, 427 A.2d 414 (1980). Before that time, the governing test was that of *State* v. *Brown*, 163 Conn. 52, 61–62, 301 A.2d 547 (1972), under which the only criterion was "whether it is possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser."

The defendant urges us not to apply *State* v. *Whistnant* retroactively[3] because of the substantive nature of the guidelines therein set down. In this case, however, that issue need not be resolved. Whether we look to the second prong of *Whistnant*,[4] or to the earlier *Brown* test, a defendant is not entitled to a charge on a lesser included offense if

supervision of such person's welfare, or (D) such other person is in custody of law or detained in a hospital or other institution and the actor has supervisory or disciplinary authority over such other person; or (2) such person subjects another person to sexual contact without such other person's consent, or (3) such person engages in sexual contact with an animal or dead body."

[3] The verdict in this case was rendered on July 30, 1978. *State* v. *Whistnant* was argued on October 10, 1979, and the decision released on February 12, 1980.

[4] Under *Whistnant* and subsequent cases refining the test there laid down, a defendant is entitled to an instruction on a lesser included offense only if each of the following four conditions is met: (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense in the manner described in the information or bill of particulars, without having first committed the lesser; (3) the evidence, introduced by either the state or the defendant, or by a

commission of the lesser offense requires any element that is not needed to commit the greater offense in the manner alleged in the information or the bill of particulars. *State* v. *Brown,* supra, 62; *State* v. *Cannon,* 185 Conn. 260, 266-67, 440 A.2d 927 (1981). The trial court correctly observed that the requirement that a person act "intentionally" to commit the offense of sexual assault in the fourth degree under § 53a-73a requires proof not needed to establish risk of injury to a minor under § 53-21. As *State* v. *Cannon,* supra, demonstrates, determination of what constitutes a lesser included offense requires a comparison of the statutory elements of the two crimes without regard to their innate seriousness or generic overlap.

The defendant concedes that, in charging him with the crime of risk of injury to a minor, the state charged him with a crime requiring only proof of general rather than of specific intent. Although the risk of injury statute; General Statutes § 53-21; encompasses wilful injury, the information and bill of particulars in this case charged the defendant only with having "acted in a manner likely to impair the health or morals of a child . . . ." The defendant argues that the word "intentionally" in the sexual assault in the fourth degree statute; Gen-

combination of their proofs, justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser. *State* v. *Cannon,* 185 Conn. 260, 266, 440 A.2d 927 (1981); *State* v. *Kolinsky,* 182 Conn. 533, 543-44, 438 A.2d 762 (1980), cert. denied, 451 U.S. 973, 101 S. Ct. 2054, 68 L. Ed. 2d 354 (1981); *State* v. *Tinsley,* 181 Conn. 388, 396-97, 435 A.2d 1002 (1980), cert. denied, 449 U.S. 1086, 101 S. Ct. 874, 66 L. Ed. 2d 811 (1981); *State* v. *Morin,* 180 Conn. 599, 601, 430 A.2d 1297 (1980); *State* v. *Whistnant,* 179 Conn. 576, 588, 427 A.2d 414 (1980).

eral Statutes § 53a-73a; does not introduce a new
element of proof because "intentionally" therein
does not require proof of specific intent but is rather
meant to avoid imposing criminal liability for acci-
dental touching. In support of this argument, the
defendant points to the fact that the statutes defin-
ing sexual assault in the higher degrees; General
Statutes §§ 53a-70, 53a-71 and 53a-72a; do not
require proof of a particular mental state but impose
sanctions upon a person who "compels" another to
submit to sexual contact.[5] It would therefore be
logical, he argues, to equate "intentionally subjects
another person to sexual contact" in § 53a-73a with
"compels another person to submit to sexual con-
tact," the language of § 53a-72a (sexual assault in
the third degree). So read, sexual assault in the

---

[5] General Statutes (Rev. to 1977) §§ 53a-70, 53a-71, and 53a-72a
provide, in relevant part: "Sec. 53a-70. SEXUAL ASSAULT IN THE
FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of sexual
assault in the first degree when such person compels another person
to engage in sexual intercourse by the use of force against such other
person or a third person, or by the threat of use of force against
such other person or against a third person which reasonably causes
such person to fear physical injury to such person or a third
person."

"Sec. 53a-71. SEXUAL ASSAULT IN THE SECOND DEGREE: CLASS C
FELONY. (a) A person is guilty of sexual assault in the second degree
when such person engages in sexual intercourse with another person
and such other person is (1) under fifteen years of age, or (2)
mentally defective, mentally incapacitated or physically helpless, or
(3) less than eighteen years old and the actor is such person's
guardian or otherwise responsible for the general supervision of such
person's welfare, or (4) such other person is in custody of law or
detained in a hospital or other institution and the actor has super-
visory or disciplinary authority over such other person."

"Sec. 53a-72a. SEXUAL ASSAULT IN THE THIRD DEGREE: CLASS D
FELONY. (a) A person is guilty of sexual assault in the third degree
when such person compels another person to submit to sexual contact
(1) by the use of force against such other person or a third person,
or (2) by the threat of use of force against such other person or
against a third person, which reasonably causes such person to fear
physical injury to such person or a third person."

fourth degree would fall within the bill of particulars, which charged the defendant with having assaulted the victim sexually.

The defendant's logic is appealing but it does not enable us to rewrite the applicable statutes. Absent an argument challenging the constitutionality of the statutory pattern selected by the legislature, we must abide by statutory language as we find it. The term "intentionally" is part of § 53a-73a, and the use of such a term requires proof of specific intent by virtue of § 53a-5.[6] The trial court therefore did not err in refusing the defendant's request to charge.

There is no error.

In this opinion the other judges concurred.

---

[6] "[General Statutes] Sec. 53a-5. CRIMINAL LIABILITY; MENTAL STATE REQUIRED. When the commission of an offense defined in this title, or some element of an offense, requires a particular mental state, such mental state is ordinarily designated in the statute defining the offense by use of the terms 'intentionally,' 'knowingly,' 'recklessly' or 'criminal negligence,' or by use of terms, such as 'with intent to defraud' and 'knowing it to be false,' describing a specific kind of intent or knowledge. When one and only one of such terms appears in a statute defining an offense, it is presumed to apply to every element of the offense unless an intent to limit its application clearly appears."