[No. 46750–1. En Banc. January 26, 1984.]

THE STATE OF WASHINGTON, *Respondent,* v. NEIL MARTIN CHRISMAN, *Petitioner.*

*Aitken, Schauble, Patrick, Neill & Charawell,* by *Robert F. Patrick,* for petitioner.

*Ronald R. Carpenter, Prosecuting Attorney,* for respondent.

WILLIAMS, C.J.—In *State v. Chrisman,* 94 Wn.2d 711, 619 P.2d 971 (1980), this court held that a campus police officer's warrantless entry into and search of the dormitory room of two Washington State University students violated the fourth amendment to the United States Constitution. Accordingly, we held that all contraband seized as a result of the illegal search should have been excluded. *Chrisman,* at 718. On January 13, 1982, the United States Supreme Court reversed and remanded the case to us. Our holding was characterized as a "novel reading of the Fourth Amendment." *Washington v. Chrisman,* 455 U.S. 1, 6, 70 L. Ed. 2d 778, 102 S. Ct. 812 (1982). Petitioner Chrisman subsequently moved for clarification of our holding in light of article 1, section 7 of our state constitution. For the reasons stated herein, we adhere to our conclusion in *State v. Chrisman, supra.* Unlike our first opinion, however, our reasoning is based solely and exclusively on the constitution and laws of the State of Washington.

The facts of this case are fully set out in both *State v. Chrisman, supra,* and *Washington v. Chrisman, supra.* For the sake of clarity, however, we repeat and summarize relevant portions of those facts. An officer of Washington State University police arrested Carl Philip Overdahl, a minor, for violation of RCW 66.44.270. This section of the code

makes it a misdemeanor for minors to possess alcoholic beverages. At the time of the arrest, Overdahl had a bottle of gin in his possession. Because Overdahl had no identification, the officer escorted him to the 11th floor of his dormitory to pick up the identification. The record reveals that when Overdahl entered the room the officer remained in the hallway outside the room. In the officer's own words he "stood in the doorway without entering, actually physically entering the room." Verbatim Report of Proceedings, at 7. From his vantage point, the officer observed Chrisman, Overdahl's roommate. He also noticed a small pipe and seeds on a desk in the room. The officer then entered the room for a closer inspection of these items. Upon closer examination the pipe was discovered to be of the type used for smoking marijuana. The seeds were marijuana. Both students waived their rights to counsel. After a more thorough search, the officer and a partner unearthed a quantity of marijuana leaves and lysergic acid diethylamide (LSD).

Following the denial of a pretrial suppression motion, Chrisman was convicted of two felony counts of possession of controlled substances. Finding the officers' warrantless entry into the room to be unlawful, we reversed that conviction and now, consistent with the remand order of the United States Supreme Court, do so again.

■ At the outset, we reaffirm our recognition of the authority of the United States Supreme Court to act as the final arbiter of controversies arising under the federal constitution. In all matters touching upon federal rights, the United States Supreme Court may review state court decisions. *See Martin v. Hunter's Lessee,* 14 U.S. (1 Wheat.) 304, 4 L. Ed. 97 (1816) (authority to review state civil cases); *Cohens v. Virginia,* 19 U.S. (6 Wheat.) 264, 5 L. Ed. 257 (1821) (authority to review state criminal cases). We also recognize, however, that this authority is limited when the federal court undertakes a review of state decisions construing state law. Writing for the majority in *Michigan v. Long,* __ U.S. __, 77 L. Ed. 2d 1201, 1214, 103 S. Ct. 3469 (1983), Justice O'Connor presented the rule as follows:

If the state court decision indicates clearly and expressly that it is alternatively based on bona fide separate, adequate, and independent grounds, we, of course, will not undertake to review the decision.

To preclude federal court review, even though citing federal precedent, a state court "need only make clear by a plain statement in its judgment or opinion that the federal cases are being used only for the purpose of guidance, and do not themselves compel the result . . ." *Michigan v. Long,* 77 L. Ed. 2d at 1214. A plain statement of independent state grounds is said to foster the development of state law free from federal interference. Such a rule advances the principles of federalism and comity between federal and state government which inhere in our system. The rule also allows for finality of judgments. With these principles in mind we now clarify our prior decision.

The fourth amendment to the United States Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

This language has been interpreted as meaning that warrantless searches are per se unreasonable unless they fall within "a few specifically established and well–delineated exceptions." (Footnote omitted.) *Katz v. United States,* 389 U.S. 347, 357, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967); *Jones v. United States,* 357 U.S. 493, 2 L. Ed. 2d 1514, 78 S. Ct. 1253 (1958).

We are not, however, limited to review under the Fourth Amendment. The federal constitution only provides minimum protection of individual rights. Accordingly, it is well established that decisions from the federal courts "do not limit the right of state courts to accord . . . greater rights." *State v. Hehman,* 90 Wn.2d 45, 49, 578 P.2d 527 (1978); *State v. Fitzsimmons,* 94 Wn.2d 858, 859, 620 P.2d 999

(1980); *Federated Publications, Inc. v. Kurtz,* 94 Wn.2d 51, 56, 615 P.2d 440 (1980); *see also Pruneyard Shopping Ctr. v. Robins,* 447 U.S. 74, 81, 64 L. Ed. 2d 741, 100 S. Ct. 2035 (1980); *Oregon v. Hass,* 420 U.S. 714, 719, 43 L. Ed. 2d 570, 95 S. Ct. 1215 (1975); *see also* Brennan, *State Constitutions and the Protection of Individual Rights,* 90 Harv. L. Rev. 489 (1977); Wilkes, *The New Federalism in Criminal Procedure: State Court Evasion of the Burger Court,* 62 Ky. L.J. 421 (1974), and cases cited therein.

In the area of search and seizure we rely upon independent state grounds primarily because of the difference in language between Const. art. 1, § 7 and the Fourth Amendment. Const. art. 1, § 7 provides: "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." Like the Fourth Amendment, this language requires us to find warrantless searches per se unreasonable. The substantial difference in language also allows us to provide heightened protection. *See State v. Ringer,* 100 Wn.2d 686, 674 P.2d 1240 (1983) for a discussion of the historical significance of this language. *See also State v. White,* 97 Wn.2d 92, 640 P.2d 1061 (1982). This language has thus formed the basis for our refusal to follow United States Supreme Court decisions defining the extent of the freedom from unreasonable searches and seizures.

An example of our rejection of federal court decisions is found in *State v. Simpson,* 95 Wn.2d 170, 622 P.2d 1199 (1980). In that case, contrary to the decision in *United States v. Salvucci,* 448 U.S. 83, 65 L. Ed. 2d 619, 100 S. Ct. 2547 (1980), we continued to recognize the validity of "automatic standing", a concept long recognized by both federal and state courts. Also, in *Ringer,* we recently declined to follow the decisions in *New York v. Belton,* 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860 (1981) and *United States v. Ross,* 456 U.S. 798, 72 L. Ed. 2d 572, 102 S. Ct. 2157 (1982). We held that state law required a narrower reading of the search incident to an arrest exception than that found under the Fourth Amendment. A final example is found in *State v. Hehman, supra.* There we

curtailed the routine practice of placing persons under custodial arrest for violations of minor traffic offenses. In so holding we explicitly refused to follow the decisions in *United States v. Robinson*, 414 U.S. 218, 38 L. Ed. 2d 427, 94 S. Ct. 467 (1973) and *Gustafson v. Florida*, 414 U.S. 260, 38 L. Ed. 2d 456, 94 S. Ct. 488 (1973). Our rejection of *Robinson* and *Gustafson* was due primarily to our recognition that full–blown custodial arrests for minor traffic offenses are not necessary to preserve the public interest in bringing the offender to justice. The holding was also intended to lessen the risk of minor offenses being used for pretextual arrests. As we did in *Simpson, Ringer,* and *Hehman,* we now look to state law to define the elements of "plain view".

As we noted in our prior decision:

The plain view exception will apply only if the following requirements are met: (1) a prior justification for intrusion; (2) inadvertent discovery of incriminating evidence; and (3) immediate knowledge by the officer that he had evidence before him.

(Citations omitted.) *State v. Chrisman,* 94 Wn.2d 711, 715, 619 P.2d 971 (1980). In this case, the first element requires us to find that the campus police officer had a lawful right to enter the room in order to determine that the items seized were contraband. Without such lawful presence, plain view would not apply. *State v. White, supra,* and our other cases on the exclusionary rule would require us to order suppression of any evidence seized as a result.

The United States Supreme Court found that the officer's conduct met this first element. It held that once the defendant was arrested, the officer had a legitimate right to keep him in his custody even to the extent of entering the room. The Court reasoned that safety and the need to preserve the integrity of the arrest required the officer to keep the suspect in custody. The Court found it "not 'unreasonable' under the Fourth Amendment for a police officer, as a matter of routine, to monitor the movements of an arrested person, as his judgment dictates . . ." *Washington v.*

*Chrisman,* 455 U.S. 1, 7, 70 L. Ed. 2d 778, 102 S. Ct. 812 (1982). Support for the formulation of this per se rule was based primarily upon *United States v. Robinson, supra.*

■ We agree that concerns for safety present legitimate and often compelling reasons for an officer to keep an arrestee in custody. Concern for safety might also allow warrantless entries into a dwelling. Despite the legitimacy of this concern, unlike the federal court, we will not adopt a "bright line" or per se rule. Also, unlike the federal court, we place no importance in *Robinson,* since we already rejected its reasoning in *Hehman.* We will not find compelling reasons for full custodial arrests and warrantless entries in a vacuum. Rather, the use of these practices can only be permitted under state law when the officer possesses specific articulable facts justifying custody and/or entry into a private dwelling.

Apart from our treatment of *Robinson,* we also refuse to adopt a bright line rule because of our decision in *State v. Daugherty,* 94 Wn.2d 263, 616 P.2d 649 (1980), *cert. denied,* 450 U.S. 958 (1981). That case also concerned the plain view exception. We recognized that the presence of an officer, which is initially lawful, can be rendered unlawful by his movement. We considered the presence of several police officers in an area of the defendant's driveway generally open to the public to be lawful. When the officers moved to more private portions of the driveway, their presence was prohibited absent a warrant. Underlying this decision is the notion that the closer officers come to intrusion into a dwelling, the greater the constitutional protection. Guidance for recognizing the sanctity of the home can be found in the federal decision of *Payton v. New York,* 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980). *Payton* involved routine felony arrests, but in light of the extra protection derived from Const. art. 1, § 7, we see no reason not to limit warrantless entries under other facts. It is only from a close examination of the facts and not a bright line rule which will help us determine when officers stray too far.

In our first opinion, we made the following observation about the facts:

> There is absolutely no evidence that it was necessary for [the officer] to enter the room to seize a weapon which might be used in an assault, that the bottle of gin was about to be destroyed, or that Overdahl was going to attempt an escape. It was a small room. [The officer] was standing in the one exit, and it was on the 11th story. It was not necessary for the officer to enter the room to make certain Overdahl secured his identification.

*State v. Chrisman, supra* at 717.

Upon reexamination of the facts of this case we do think the officer was justified in accompanying Overdahl upstairs. In a building the size of the dormitory the possibility of escape loomed large. Without access to Overdahl's identification there was also no way for the officer to determine whether he was a student or just visiting the campus. The officer could have reasonably concluded that Overdahl would just disappear.

The facts continue to lead to the conclusion that entry into the room was not justified. The case involved a misdemeanor. Neither the officer nor the evidence was threatened. The setting precluded escape. We now hold that the officer's warrantless entry into the dormitory room, following the misdemeanor arrest, was not permitted because the officer was not presented with facts sufficient to demonstrate (1) a threat to the officer's safety, or (2) the possibility of destruction of evidence of the misdemeanor charged, or (3) a strong likelihood of escape. Indeed the fact that the officer did not initially accompany Overdahl into the room shows the absence of any concern for safety or the integrity of the arrest. Even if we agreed with the United States Supreme Court's rule, we think the officer abandoned any claim of reasonableness by allowing Overdahl to enter alone. This abandonment supplies added evidence of the need to examine the facts of each case rather than relying upon per se or bright line rules. In this case it is clear that the officer entered the room for the purpose of a search and

nothing more. The heightened protection afforded state citizens against unlawful intrusion into private dwellings places an onerous burden upon the government to show a compelling need to act outside of our warrant requirement. In cases of minor violations, where no danger exists, and where there is no threat of destruction of the evidence, we can find no compelling need to enter a private residence.

In short, under the facts of this case, the first element of the plain view doctrine was not met. There was no prior justification for the intrusion as required in *State v. Daugherty, supra.* Accordingly, in the interest of finality of judgments, and based upon Const. art. 1, § 7, we stand by the conclusion in our first decision.

ROSELLINI, UTTER, BRACHTENBACH, and PEARSON, JJ., concur.

DOLLIVER, J., concurs in the result.

DIMMICK, J. (dissenting)—The issue in this case is the extent to which a police officer's discretion to maintain visual surveillance of an arrestee justifies intrusion into the arrestee's privacy. When the officer is legitimately exercising that discretion, "plain view" contraband, inadvertently discovered, may be seized. *See State v. Daugherty,* 94 Wn.2d 263, 616 P.2d 649 (1980), *cert. denied,* 450 U.S. 958 (1981); 2 W. LaFave, *Search and Seizure* § 6.4, at 421 (1978). The majority excludes "plain view" contraband from evidence in this case by finding that an officer may legitimately accompany the arrestee to the door of his campus dormitory room, but may not enter the room. This distinction in an arrest situation defies common sense.

The majority concedes that the officer should be entitled to maintain his safety and the integrity of the arrest. It escapes me how the officer can do either without watching the room and the arrestee. It follows that the officer's need to monitor the arrestee's movements wherever he might go creates an ongoing right to be present in the room with the arrestee. *Washington v. Chrisman,* 455 U.S. 1, 70 L. Ed. 2d

778, 102 S. Ct. 812 (1982); *State v. Shaw*, 186 Conn. 45, 438 A.2d 872 (1982); *Hartline v. State*, 161 Ga. App. 847, 288 S.E.2d 902 (1982). Further, when an arrestee requests access to a specified area, a limited preventive search of the location is not an inappropriate intrusion into the arrestee's privacy. *See People v. Hawkins*, 88 Ill. App. 3d 178, 410 N.E.2d 309 (1980); *Haltiwanger v. United States*, 377 A.2d 1142 (D.C. 1977). Without such rules, the officer's discretion to maintain control over the arrestee is a concept without substance.

The majority is drawing a line between visual intrusion and physical intrusion, implying that only the first is legitimate without some exigency. This distinction may be necessary to protect privacy rights in other contexts, such as when police see, from a public vantage point, evidence inside a private home. *See* W. Ringel, *Searches and Seizures, Arrests and Confessions* § 8.2(a), at 8–8 (2d ed. 1979). But applying that distinction in the circumstances of an arrest only serves to frustrate the officer's surveillance discretion.

This decision and other recent search and seizure decisions of this court, *see, e.g., State v. Ringer*, 100 Wn.2d 686, 703, 674 P.2d 1240 (1983) (Dimmick, J., dissenting), severely curtail police discretion during the arrest process. If reasonably necessary police activity is invalid, what then is to guide police conduct? Under these decisions, an officer apparently must see a weapon, impending destruction of evidence, or imminent escape before being entitled to take steps to thwart what has become an exigent situation. Here, the majority, relying on hindsight analysis, seems to reject practical preventive measures in favor of police conduct which merely reacts to an incipient emergency.

I fear we are losing sight of law enforcement's purpose in the insistence on reaching a certain result. Providing clear guidance to law enforcement officials, so that the innocent will be exonerated and the guilty convicted, is our paramount concern. We are not assuring clear rules when we waffle between state and federal constitutions. Nor does

824

restating the facts to provide a new focus for a case clarify the applicable legal standard.

Under federal law, the discretion exercised by the police officer in this case is legitimate. I find nothing in our state constitution that requires us to so severely restrict police discretion during an arrest. We should be protecting the constitutional right to be free of arbitrary and unreasonable police activity. We should not be prohibiting the exercise of reasonable police discretion.

I dissent.

STAFFORD and DORE, JJ., concur with DIMMICK, J.

Reconsideration denied March 20, 1984.