[No. 75545-1.   En Banc.]
Argued May 24, 2005.     Decided August 11, 2005.

THE STATE OF WASHINGTON, *Respondent*, v. LESLIE ANNE KULL, *Petitioner*.

*Sharon J. Blackford*, for petitioner.

*Norm Maleng, Prosecuting Attorney*, and *Daniel J. Clark, Deputy*, for respondent.

¶1 MADSEN, J. — Petitioner Leslie Anne Kull challenges a trial court's ruling denying her motion to suppress cocaine discovered in the bedroom of her apartment by police officers following her arrest. She claims, among other things, that the warrantless entry into her apartment violated Washington Constitution article I, section 7. The Court of Appeals affirmed Kull's conviction, holding that legitimate officer safety concerns justified the search. We reverse.

## FACTS[1]

¶2 On July 13, 2000, two undercover police officers, Zsolt Dornay and David Clement, entered the apartment building where Leslie Kull resided to arrest her on a misdemeanor traffic warrant. As they approached Kull's apartment, the officers passed a laundry room located approximately 20 to 25 feet from Kull's unit. Because the officers had obtained a picture of Kull they recognized that the woman doing laundry was Kull. The officers arrested Kull and placed her in handcuffs. After some discussion

---

[1] The facts are taken from the undisputed findings of fact in the trial court's written findings of fact and conclusions of law.

about the warrant, the officers informed Kull that she could post $500, the amount of the warrant, and avoid being booked into jail. Norman Miller, an acquaintance of Kull's, was inside Kull's apartment waiting to give her a ride. Kull asked Miller to retrieve her purse from her bedroom so she could get the money necessary for bail. Officer Dornay followed Miller into Kull's bedroom and observed a baggie of white substance he recognized as cocaine on the top of a dresser.[2] The officer seized the cocaine as well as Kull's purse. The officers asked Kull if there were any other drugs or weapons in the apartment. She told them there was a gun and where it could be located. The officers searched Kull's purse and found methamphetamine.

¶3 Kull was charged with possession of cocaine, methamphetamine, and a firearm. Prior to trial, Kull moved to suppress the evidence relating to these charges based on an illegal entry into her apartment and on the failure of the officers to advise her of her *Miranda* rights.[3] The trial court granted Kull's motion to suppress the gun and the methamphetamine but denied suppression of the cocaine.

¶4 In its written findings the trial court listed the disputed and the undisputed facts and then concluded that the disputed facts were "immaterial to the issues" in the case. Clerk's Papers (CP) at 23 (Written Findings of Fact and Conclusions of Law (FF) 3). Significantly, in its list of disputed facts, the trial court included the statement, "Officer Dornay testified that he followed Miller to the bedroom door because he was concerned about officer safety and did not know what Miller might be recovering from the bedroom. He testified that he did not enter the bedroom, but could see the cocaine in plain view from outside the bedroom door." CP at 22 (FF 2). The trial court also entered legal conclusions, including a conclusion that "the officers had legitimate officer safety concerns in following Miller to

---

[2] At some point the officers determined that Miller had no warrants and he was allowed to leave.

[3] *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

the bedroom door after the defendant asked him to retrieve her purse from inside the bedroom. Once in the bedroom door, the officer was in a lawful vantage point, the cocaine was in plain view, and properly seized." CP at 23 (FF 4).

¶5 Following the suppression hearing, Kull proceeded to a bench trial and was convicted of possession of cocaine. Kull appealed, arguing, among other things, that the State had failed to prove that Officer Dornay was lawfully present at her bedroom door and therefore failed to establish the requirements of the plain view exception to the warrant requirement. The Court of Appeals affirmed, holding that officer safety concerns justified the officer's warrantless intrusion. *State v. Kull*, noted at 120 Wn. App. 1063 (2004).

## ANALYSIS

¶6 In this case the trial court ruled, and the Court of Appeals agreed, that Officer Dornay's seizure of cocaine from Kull's bedroom was justified under the plain view exception to the warrant requirement. Kull claims that the State failed to establish the requirements for application of that exception and that the seizure of cocaine violated the privacy protections of article I, section 7 of the Washington Constitution. Thus, she contends that the cocaine seized from her bedroom should have been suppressed and her conviction must be reversed.

¶7 Article I, section 7 provides: "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." The constitution thus protects both a person's home and his or her private affairs from warrantless searches. *State v. Young*, 123 Wn.2d 173, 184-85, 867 P.2d 593 (1994); *see State v. Boland*, 115 Wn.2d 571, 577, 800 P.2d 1112 (1990). However, this court has held that the home receives heightened constitutional protection. *Young*, 123 Wn.2d at 185. Generally, a person's home is a highly private place. *State v. Berber*, 48 Wn. App. 583, 589, 740 P.2d 863 (1987). In no area is a citizen more entitled to privacy than in his or her home. *State v. Solberg*,

122 Wn.2d 688, 861 P.2d 460 (1993). For this reason, "the closer officers come to intrusion into a dwelling, the greater the constitutional protection." *State v. Chrisman*, 100 Wn.2d 814, 820, 676 P.2d 419 (1984) (*Chrisman* II). The "heightened protection afforded state citizens against unlawful intrusion into private dwellings places an onerous burden upon the government to show a compelling need to act outside of our warrant requirement." *Id.* at 822.

¶8 Under article I, section 7, warrantless searches are per se unreasonable. *State v. Khounvichai*, 149 Wn.2d 557, 562, 69 P.3d 862 (2003); *Chrisman* II, 100 Wn.2d at 818. There are exceptions to the warrant requirement, but the State bears the burden of showing a warrantless search falls within one of these exceptions. *Khounvichai*, 149 Wn.2d at 562. "Plain view" is one such exception. The requirements for plain view are (1) a prior justification for intrusion, (2) inadvertent discovery of incriminating evidence, and (3) immediate knowledge by the officer that he had evidence before him. *State v. Chrisman*, 94 Wn.2d 711, 715, 619 P.2d 971 (1980) (*Chrisman* I).[4] The trial court here concluded that the "plain view" exception to the warrant requirement was satisfied, ruling that "once in the bedroom door, the officer was in a lawful vantage point, the cocaine was in plain view, and properly seized." CP at 23 (FF 4).

¶9 Kull claims that the trial court's findings of fact do not support the trial court's conclusion that the officers were at a lawful vantage point when they observed the cocaine and therefore the State has failed to establish the first requirement of the plain view exception. We agree.

¶10 The State's theory at the suppression hearing was that Kull agreed to Officer Dornay's suggestion that they step into her apartment following Kull's arrest in the laundry room. The State argued that once in the apartment safety concerns led Officer Dornay to follow Miller to Kull's bedroom door. Although the Court of Appeals ruled that the

---

[4] The second prong, inadvertent discovery, is no longer a requirement to establish the plain view exception under the Fourth Amendment. *State v. O'Neill*, 148 Wn.2d 564, 583 & n.6, 62 P.3d 489 (2003).

State failed to establish that Kull consented to the officer's entry, it nevertheless found that the entry was justified by officer safety concerns.[5]

¶11 This court has held that concerns for safety present legitimate and often compelling reasons for an officer to keep an arrestee in custody. *Chrisman* II, 100 Wn.2d at 820. Concern for safety might also allow warrantless entry into a dwelling. *Id.* In *Chrisman* II, a campus police officer arrested an underage college student for the offense of minor in possession of alcohol. The arrestee told the officer that he had identification in his dorm room and the officer accompanied him to retrieve it. The officer remained in the open doorway of the dorm room and observed the student's roommate, Chrisman, placing a small box in the medicine cabinet. Chrisman appeared nervous at the sight of the officer. The officer noticed what he believed to be marijuana seeds and a hashish pipe. The officer then entered the room to investigate and found a pipe and marijuana seeds. A subsequent search netted additional drugs. Relying on article I, section 7, the court held that a warrantless entry is justified only if there is evidence of (1) a threat to the officer's safety, or (2) the possibility of destruction of evidence of the misdemeanor charged, or (3) a strong likelihood of escape. *See Chrisman* II, 100 Wn.2d at 821.

¶12 Applying its rule to the facts, the court noted that Chrisman was arrested for a misdemeanor crime. It also found no evidence that either the officer or the evidence was threatened. Further, the court observed that there was no escape route from the dorm room, which was located on the 11th floor. The court also attached significance to the fact that the officer initially remained in the hallway, abandoning any reasonable argument of safety concerns. Thus, the

---

[5] Kull disputed the facts surrounding Officer Dornay's entry, and the trial court declined to make a finding that Kull consented to the entry. In reviewing the findings from a suppression hearing, the appellate court will presume that the State has failed to prove a factual issue if the trial court fails to make a finding on that issue. *State v. Armenta*, 134 Wn.2d 1, 14, 948 P.2d 1280 (1997). Accordingly, the Court of Appeals ruled that Kull did not consent to the entry and the State has not appealed that issue.

court concluded that "in cases of minor violations, where no danger exists, and where there is no threat of destruction of the evidence, we can find no compelling need to enter a private residence." *Id.* at 822.

¶13 Kull argues that this case is controlled by *Chrisman* II. Kull was under arrest on a misdemeanor traffic warrant. She was in handcuffs and, according to Officer Dornay's testimony, Kull was cooperative. The officers offered no testimony showing that they objectively believed Miller or Kull to be armed or that either of them threatened the officers. And, although the record was not developed on this point, there is nothing in the record that suggests Kull could have escaped or that she attempted to do so.

¶14 The State contends that *Chrisman* II is factually distinguishable. There the court concluded that the officer entered the defendant's dorm room "for the purpose of a search and nothing more." *Chrisman* II, 100 Wn.2d at 821-22. In contrast, the trial court here concluded that "legitimate officer safety concerns" motivated the officer to follow Miller. CP at 23 (FF 4).

¶15 Although Kull concedes that officer safety concerns may, in some circumstances, provide justification for a warrantless entry, she argues that the trial court's findings of fact do not support the entry in this case. As noted earlier, among the disputed facts that the trial court declined to resolve was the fact that Officer Dornay "followed Miller to the bedroom door because he was concerned about officer safety and did not know what Miller might be recovering from the bedroom." CP at 22 (FF 2). Additionally, Kull argues that the officers' claim of safety concerns is undercut by other undisputed evidence. At the suppression hearing Miller testified that he is five feet, three inches tall and weighs 135 pounds. Officer Dornay also testified that he thought Miller was "sketchy" and that he believed Miller was at the apartment to buy drugs. Pretrial Hr'g Tr. at 44. Finally, there was conflicting testimony from Officer Dornay regarding whether he ran a warrants check for Miller before or after he followed Miller to Kull's bedroom.

Kull contends that these facts undercut the trial court's conclusion that Officer Dornay followed Miller out of concern for his safety.

¶16 Although the Court of Appeals recognized the absence of written factual findings, it ruled that the trial court's oral ruling, coupled with its written conclusion that the officers had legitimate safety concerns when they followed Miller to the bedroom door, provided a separate justification for the officers' presence at Kull's bedroom door. In its oral ruling the trial court stated:

> "I think it's part and parcel of the arrest that they would allow her to go into her apartment and pick up some things to go to the station, and I think at that point they have a right to accompany her, and that's—I appreciate it may be a stretch to get from the front doorway into the bedroom, but that's in fact where she was sending people to get stuff for her, so I think it's only logical and reasonable that the officers would at least track around there to be sure nothing was going on behind their backs, so finding the cocaine in plain view on the top of the dresser I think is something that doesn't violate any search and seizure type of issues."

*Kull*, noted at 120 Wn. App. 1063, slip op. (quoting trial court decision).

¶17 An appellate court may consider a trial court's oral decision so long as it is not inconsistent with the trial court's written findings and conclusions. *State v. Bryant*, 78 Wn. App. 805, 812-13, 901 P.2d 1046 (1995). Although the trial court's oral ruling does not contradict its written conclusion that the officers had legitimate officer safety concerns, the oral decision does contradict the trial court's written finding that the issue of officer safety was disputed. The oral decision cannot be considered to override the trial court's determination that concern about officer safety was a disputed fact that the court found immaterial to its decision. Thus, the State has failed to establish, as a factual matter, that Officer Dornay was concerned about officer safety. Accordingly, the trial court's conclusion of law regarding officer safety is factually unsupported. In the ab-

sence of justification for the officers' presence at Kull's bedroom door, the warrantless intrusion constitutes a violation of article I, section 7 of the Washington Constitution and the cocaine was obtained illegally.

¶18 We hold that because the trial court's findings of fact do not support its conclusion that the plain view exception to the warrant requirement justified seizure of the cocaine from Kull's bedroom, the court erred in failing to suppress the evidence obtained in the unlawful search and seizure. *State v. White*, 97 Wn.2d 92, 111-12, 640 P.2d 1061 (1982) ("without an immediate application of the exclusionary rule whenever an individual's right to privacy is unreasonably invaded, the protections of the Fourth Amendment and Const. art. I, § 7 are seriously eroded"). Accordingly, we reverse Kull's conviction for possession of cocaine.

ALEXANDER, C.J., and C. JOHNSON, SANDERS, BRIDGE, CHAMBERS, OWENS, FAIRHURST, and J.M. JOHNSON, JJ., concur.