

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE MAY 1 6 2019
[signature]
CHIEF JUSTICE

This opinion was
filed for record
at 8am on May 16, 2019

[signature]
Susan L. Carlson
Supreme Court Clerk

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | No. 96017-8 |
| v. | ) | |
| | ) | En Banc |
| DAVID ZACHERY MORGAN, | ) | |
| | ) | |
| Respondent. | ) | Filed MAY 1 6 2019 |

GONZÁLEZ, J.—David Morgan was convicted by a jury of first degree assault, attempted murder, and arson. A bloodstain pattern analysis performed on his clothing suggested he was in close proximity to the victim when she suffered her injuries. We must decide if the warrantless seizure of his clothing, which officers reasonably concluded contained evidence, was justified by an exception to the warrant requirement.

Based on our inconsistent articulation of the plain view doctrine, the Court of Appeals found that the State was required to establish inadvertence

as a separate element and reversed Morgan's convictions. We hold

inadvertence is not a separate element required under the plain view

doctrine, reinstate Morgan's convictions, and remand to the Court of

Appeals for further proceedings in that court.

FACTS

Morgan and his ex-wife, Brenda,[1] shared custody of their daughter.

About the time Brenda came to pick up their daughter from Morgan's house,

Morgan's house was in flames. Firefighters found Morgan kneeling in his

driveway, hair singed and barely able to speak. A firefighter repeatedly

asked Morgan if anyone was in the burning house. After a period of silence,

Morgan directed firefighters to the garage, where Brenda was lying in a pool

of blood. Brenda was nonresponsive and badly injured, with multiple

lacerations on her head, fractures, and severe burns on her upper body.

Morgan and Brenda's clothing smelled of gasoline. Medics transported

them to separate hospitals, observing blood on Morgan's clothing.

A supervising officer promptly told Officer Christopher Breault to

"collect Morgan's clothing [from the hospital] and try to get an initial

---

[1] We use only her first name to avoid subjecting her to unwanted publicity. No disrespect is intended.

statement." Clerk's Papers (CP) at 208. A crime scene technician was also dispatched to collect Brenda's clothing.

Officer Breault spoke with Morgan in his hospital room for hours. Morgan disclosed that his daughter was safe at Morgan's mother's home during the fire. Morgan said he woke up to find his house on fire. He said he then found Brenda in his house with her sweater burning and tried to help her remove it. At some point during their conversation, Officer Breault noticed that hospital staff had put Morgan's clothing in "several plastic shopping like bags" and left his clothing on the counter in Morgan's hospital room. 1 Verbatim Report of Proceedings (Feb. 4, 2016) at 151, 154-55. The officer later testified that it "was almost like [the clothing was] in like some sort of gift bag; it looked like it had a hospital logo on it. And they were just regular plastic bags that you could get at a store." *Id.* at 158. When the crime scene technician arrived with arson bags designed to preserve evidence, he and Officer Breault secured Morgan's clothing. Officer Breault also secured a utility knife with dried blood on the handle from a counter near the clothing. Hospital staff told Officer Breault they found the knife in Morgan's clothing.

Morgan was charged with attempted first degree murder, first degree arson, and first degree assault. He unsuccessfully moved to suppress the

seized clothing.[2] The trial court rejected the State's plain view argument because Officer Breault did not find it inadvertently and he could not examine the clothing without removing it from the plastic hospital bags. Nonetheless, the trial court found that the removal of Morgan's clothing was justified by exigent circumstances because "there are special bags that have been designed and are available to put clothing and other items into so as to preserve that particular evidence." *Id.* at 182.

The Court of Appeals found the State had not met its burden of establishing exigent circumstances because it had not shown applying for a warrant would have resulted in a loss of evidence. It also rejected the State's claim that the plain view doctrine applied because Officer Breault did not smell gasoline or see blood through the plastic hospital bags or come across it inadvertently. The State sought, and we granted, review. *State v. Morgan*, 191 Wn.2d 1026 (2018).

ANALYSIS

We are faced with a warrantless seizure of clothing associated with criminal activity. Under the robust privacy protections of our constitution, any state intrusion into private affairs must be done under "authority of law."

---

[2] The record contains no written findings or conclusions for the CrR 3.6 hearing, but the trial court's oral findings adequately present the issues for appellate review. The trial court's written CrR 3.5 findings concern some of Officer Breault's observations.

WASH. CONST. art. I, § 7. "Authority of law" generally means a warrant or a well-established exception to the warrant requirement. *State v. Ladson*, 138 Wn.2d 343, 350, 979 P.2d 833 (1999) (citing *City of Seattle v. McCready*, 123 Wn.2d 260, 273, 868 P.2d 134 (1994)). The plain view doctrine and exigent circumstances are well-established exceptions. We hold the State failed to establish that exigent circumstances justified the intrusion, but it did justify the intrusion under the plain view doctrine.

We agree with the Court of Appeals' conclusion that the State did not meet its burden to show that exigent circumstances existed when Officer Breault seized Morgan's clothing. The State "must establish the exception to the warrant requirement by clear and convincing evidence." *State v. Garvin*, 166 Wn.2d 242, 250, 207 P.3d 1266 (2009) (citing *State v. Smith*, 115 Wn.2d 775, 789, 801 P.2d 975 (1990)). Critically, the exigent circumstance "exception requires a compelling need for officer action and circumstances that make the time necessary to secure a warrant impractical." *State v. Baird*, 187 Wn.2d 210, 221, 386 P.3d 239 (2016) (plurality opinion) (citing *Missouri v. McNeely*, 569 U.S. 141, 149-50, 133 S. Ct. 1552, 185 L. Ed. 2d 696 (2013)). While the State had a legitimate concern that trace evidence on Morgan's clothing could be contaminated by Morgan or hospital staff, the officers exhibited no urgency in collecting the clothing,

which sat undisturbed on the counter for hours, including when Morgan was alone with hospital staff.

We disagree, however, with the Court of Appeals' application of the plain view doctrine. We have been inconsistent in articulating the elements the State must establish to justify a warrantless intrusion under the plain view doctrine. We have said the plain view doctrine applies "when the police (1) have a valid justification to be in an otherwise protected area and (2) are immediately able to realize the evidence they see is associated with criminal activity." *State v. Hatchie*, 161 Wn.2d 390, 395, 166 P.3d 698 (2007) (citing *State v. Myers*, 117 Wn.2d 332, 346, 815 P.2d 761 (1991)). But in some cases, we have also articulated a third element, inadvertence. *See, e.g.*, *State v. Kull*, 155 Wn.2d 80, 85 & n.4, 118 P.3d 307 (2005).[3]

We take this opportunity to clarify the law. Properly understood, there is no separate inadvertence requirement in the plain view doctrine. Officers are not restricted to seizing evidence solely when they come across the evidence unintentionally and inadvertently. As the United States Supreme Court held, "[I]nadvertence is a characteristic of most legitimate

---

[3] "The requirements for plain view are (1) a prior justification for intrusion, (2) inadvertent discovery of incriminating evidence, and (3) immediate knowledge by the officer that [they] had evidence before [them]." *Kull*, 155 Wn.2d at 85 (citing *State v. Chrisman*, 94 Wn.2d 711, 715, 619 P.2d 971 (1980), *rev'd*, 455 U.S. 1, 102 S. Ct. 812, 70 L. Ed. 2d 778 (1982)). The intrusion is often the detention of a person or entry into a place, not the seizure of the evidence itself.

'plain-view' seizures" but "it is not a necessary condition." *Horton v. California,* 496 U.S. 128, 130, 110 S. Ct. 2301, 110 L. Ed. 2d 112 (1990).

Officers are "entitled to keep [their] senses open to the possibility of contraband, weapons, or evidence of a crime." *State v. Lair,* 95 Wn.2d 706, 719, 630 P.2d 427 (1981).[4] There is, however, an article I, section 7 requirement that a seizure not be based on pretext. *See, e.g., State v. Montague,* 73 Wn.2d 381, 385, 438 P.2d 571 (1968). "Put simply, the law does not vest in police the discretion to seize first and decipher a piece of evidence's incriminating nature later." Katie Farden, *Recording a New Frontier in Evidence-Gathering: Police Body-Worn Cameras and Privacy Doctrines in Washington State,* 40 SEATTLE U. L. REV. 271, 284-85 (2016). Thus, a plain view seizure is legal when the police (1) have a valid justification to be in an otherwise protected area, provided that they are not there on a pretext, and (2) are immediately able to realize the evidence they see is associated with criminal activity.

Here, Morgan challenged the seizure of his clothing. Morgan does not dispute that "the officers had a lawful reason to be in the hospital room."

---

[4] The fact that the evidence in plain view is not contraband is of no relevance. *See, e.g., State v. Weller,* 185 Wn. App. 913, 926, 344 P.3d 695 (2015) (seizing a board associated with an assault); *State v. Alger,* 31 Wn. App. 244, 248, 640 P.2d 44 (1982) (seizing a sleeping bag associated with a rape).

CP at 306-07. The State need show only that it was immediately apparent that the clothing was associated with criminal activity, which it aptly does.

Objects are immediately apparent under the plain view doctrine "when, considering the surrounding circumstances, the police can reasonably conclude" that the subject evidence is associated with a crime. *State v. Hudson*, 124 Wn.2d 107, 118, 874 P.2d 160 (1994) (citing *Lair*, 95 Wn.2d at 716). Certainty is not necessary.[5]

Morgan's clothing was expected to be in the hospital room and was detectable in the plastic hospital bags on the counter. Officer Breault's supervising officer, having become aware of the evidentiary value of Morgan's clothing—including that it smelled like gasoline—instructed Officer Breault to collect it. Without examining the clothing, Officer Breault reasonably concluded that Morgan's clothing would have evidentiary value given the conversation he had had with Morgan and observations he made during that time, including a knife with dried blood on the handle.

---

[5] As the United States Supreme Court has noted, "[T]he use of the phrase 'immediately apparent' was very likely an unhappy choice of words, since it can be taken to imply that an unduly high degree of certainty as to the incriminatory character of evidence is necessary for application of the 'plain view' doctrine." *Texas v. Brown*, 460 U.S. 730, 741, 103 S. Ct. 1535, 75 L. Ed. 2d 502 (1983).

In light of the fire, Brenda and Morgan's respective injuries, the supervising officer's knowledge, and observations by Officer Breault and others, there were more surrounding circumstances than necessary. Officer Breault did not have to manipulate the bags to know what they contained.[6] He reasonably concluded that the clothing contained evidence associated with suspected criminal activity. Nothing in this record suggests any ambiguity; it is clear from context that the plastic hospital bags contained the clothing hospital staff removed in treating Morgan. Thus, the State met its burden to show that Officer Breault lawfully seized Morgan's clothing under the plain view doctrine.

## CONCLUSION

While exigent circumstances did not exist, the plain view doctrine permitted the seizure of Morgan's clothing. We reverse and remand to the Court of Appeals for further proceedings in that court.

---

[6] Conversely, an officer's suspicion that an expensive stereo in a rundown house was stolen would not allow the officer to manipulate it. *Arizona v. Hicks*, 480 U.S. 321, 326-27, 107 S. Ct. 1149, 94 L. Ed. 2d 347 (1987); *accord State v. Murray*, 84 Wn.2d 527, 536, 527 P.2d 1303 (1974). This case is different because Officer Breault could reasonably conclude the clothing was associated with a crime without having to *see* blood or *smell* gasoline on the clothing through the plastic hospital bags.

Gonzáles, J.

WE CONCUR:

Fairhurst, C.J.

Stephens, J.

Johnson, J.

Wiggins, J.

Owens, J.

Yu, J.

*State v. Morgan (David Zachery)*

No. 96017-8

MADSEN, J. (dissenting)—I disagree with the majority that the seizure of David Morgan's clothes falls under the plain view exception to the search warrant requirement. Under the plain view doctrine, it must be immediately apparent to the seizing officer that evidence he has discovered is associated with criminal activity. The majority's holding here divorces the observations of the seizing officer from the seizure. Instead, the majority says that if an officer has information from a civilian witness who has observed evidence that may indicate criminal activity when that evidence was at a different location, a different officer, who was not informed that evidence was incriminating and who did not himself observe anything incriminating, may seize that evidence in a different location under the plain view doctrine—a doctrine meant solely to allow law enforcement an exception to obtain evidence without a warrant when it is obvious to the seizing officer that the evidence is associated with a crime. While the chain of events here clearly supports issuance of a warrant, it certainly does not fit within any of the "jealously and carefully drawn exceptions" to the warrant requirement.

In reaching this unprecedented application of the plain view doctrine, the majority, sub silentio, imports the "fellow officer" rule, which allows officers to make *warrantless arrests* on the strength of collective information. *Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 91 S. Ct. 1031, 28 L. Ed. 2d 306 (1971). This rule has never been imported into the "plain view" exception for obvious reasons—it cannot be plain to the seizing officer that he is viewing incriminating evidence unless he observes it and is himself aware of the surrounding facts and circumstances. Because the majority severely undermines the search warrant requirement under article I, section 7 of our constitution, which has long been held to provide greater protections than the Fourth Amendment, I respectfully dissent. WASH. CONST. art. I, § 7; U.S. CONST. amend. IV.

Discussion

Our constitution provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." WASH. CONST. art. I, § 7. Generally, an officer acts under authority of law when executing a search and seizure under a valid warrant. *State v. Miles*, 160 Wn.2d 236, 244, 156 P.3d 864 (2007). Warrants must be supported by probable cause and describe the places to be searched or persons or things to be seized with particularity. *State v. Perrone*, 119 Wn.2d 538, 545, 834 P.2d 611 (1992). This is, of course, to prevent a "'general, exploratory rummaging in a person's belongings.'" *Id.* (internal quotations omitted) (quoting *Andresen v. Maryland*, 427 U.S. 463, 480, 96 S. Ct. 2737, 49 L. Ed. 2d 627 (1976)). It is well settled that a warrantless search is per se unreasonable unless it falls under one of the "'jealously and carefully

2

drawn exceptions.'" *State v. Hatchie*, 161 Wn.2d 390, 395, 166 P.3d 698 (2007) (internal quotation marks omitted) (quoting *State v. Hendrickson*, 129 Wn.2d 61, 70, 917 P.2d 563 (1996)). The plain view doctrine is one of those exceptions.

A plain view search is legal when officers (1) have a valid justification to be in an otherwise protected area and (2) are immediately able to recognize the evidence they see is associated with criminal activity. *Id.* at 395 (citing *State v. Myers*, 117 Wn.2d 332, 346, 815 P.2d 761 (1991)). An object is immediately apparent under the second prong of a plain view search when, "considering the surrounding facts and circumstances, the police can reasonably conclude they have evidence before them." *State v. Lair*, 95 Wn.2d 706, 716, 630 P.2d 427 (1981). "In other words, police have immediate knowledge if the *officers* have a reasonable belief that evidence is present." *State v. Munoz Garcia*, 140 Wn. App. 609, 625, 166 P.3d 848 (2007) (emphasis added); *see also State v. Kennedy*, 107 Wn.2d 1, 10, 726 P.2d 445 (1986) (it is not an unlawful search and seizure when an officer, observing from a vantage point where he can legally be present, immediately recognizes an object as incriminating evidence). Probable cause is required to satisfy the immediate recognition prong of the plain view doctrine. *State v. Hudson*, 124 Wn.2d 107, 118, 874 P.2d 160 (1994) (citing *Arizona v. Hicks*, 480 U.S. 321, 326, 107 S. Ct. 1149, 94 L. Ed. 2d 347 (1987)).

In this case, the officer who seized the clothing, Officer Christopher Breault, was initially dispatched to Morgan's hospital room to "give medical updates to Sergeant [Curtis] Zatylny" and to find more information about a possible missing child.

3

1 Verbatim Report of Proceedings (Feb. 4, 2016) at 115. At some point, Sergeant Zatylny ordered Officer Breault to seize Morgan's clothes as evidence. After going in and out of Morgan's hospital room, Officer Breault noticed Morgan's clothing had been placed "in several plastic bags that the hospital had provided and then placed on the back counter of the . . . hospital room." *Id.* at 151. The bags had a hospital logo on it but otherwise "were just regular plastic bags that you could get at a store." *Id.* at 158.

The first step in our analysis must be a recognition that Morgan's clothing is a private affair and that he has an expectation that his privacy in the clothing is not disturbed without a warrant. Next, it is important to recognize that clothing is not inherently incriminating. Here, Officer Breault believed the bags he seized contained Morgan's clothing, but he did not observe anything about the clothing that could be described as incriminating. To justify the seizure, the State cites two cases it argues support the position that "surrounding facts and circumstances" in the context of plain view means any and all information that any police officer may know related to the investigation. *See* Suppl. Br. of Pet'r at 10-11. While the majority agrees with this broad reading of a "jealously and carefully drawn exception," those cases do not actually broaden the narrowly drawn plain view exception in the way the majority attempts to do here. In *State v. Alger*, a sleeping bag was seized under the plain view doctrine as evidence of statutory rape. 31 Wn. App. 244, 640 P.2d 44 (1982). But the officers who seized the evidence were themselves "acquainted with the details of the crime." *Id.* at 247. They were informed that sexual relations between the defendant and the victim

4

occurred on a sleeping bag while she was on her menstrual cycle. *Id.* at 246. The sleeping bag was seized after it was clearly visible from their vantage point near the front door, based on the surrounding facts and circumstances known to the officers at the time *those officers* seized the evidence. Similarly, in *State v. Weller*, officers were called in to assist on a wellness check after a Child Protective Services investigator interviewed the defendant's children for possible abuse. 185 Wn. App. 913, 344 P.3d 695 (2015). The officers there interviewed two of the children who described being beaten with a board. *Id.* at 919. When the officers moved to the garage for greater privacy, the officers discovered a board that the children later indicated was used for their beatings. *Id.* The board—which the officers observed had a long groove in it and had discoloration that appeared to be dried blood—was seized by the officers. In both *Alger* and *Weller*, *the seizing officer* was aware of the "surrounding facts and circumstances" that justified the warrantless seizure of evidence.

Here, that is not the case. Officer Breault never testified to smelling any gasoline in the room or near the plastic bags, nor did he state he observed any blood on Morgan's clothing through the plastic bags.[1] Indeed, the officer's description of the plastic bags suggests the clothing was not observable through the bags at all. Moreover, Officer Breault was not there to investigate any possible crime committed by Morgan. His only purpose for being there was to observe Morgan and to determine the location of the child

---

[1] At most, Officer Breault noticed and later seized a utility knife with some dried blood near the bag of clothing. But Morgan does not dispute the seizure of the utility knife.

5

who may have had a connection to the events. While firefighters and paramedics observed that the clothes belonging to Morgan's ex-wife, Brenda, smelled like gasoline in the ambulance, as did Morgan's clothing, all of that information was from a non-law-enforcement source and was relayed only to Sergeant Zatylny. Sergeant Zatylny himself did not notice any evidence of gasoline or other incriminating evidence when he responded to the residential fire. Crucially, none of the information regarding Morgan's or Brenda's clothing was relayed to Officer Breault. To discover that evidence, Officer Breault would have had to manipulate the bag's contents to determine whether the clothing actually contained incriminating evidence. But doing so would undoubtedly be an unlawful seizure. *See State v. Johnson*, 104 Wn. App. 489, 501-02, 17 P.3d 3 (2001) (discussing *Hicks*, 480 U.S. at 328-29 (manipulating stereo equipment that an officer reasonably suspects may be incriminating evidence to determine the serial number, which would give the officer probable cause, constitutes an unlawful search under the plain view doctrine)).

While we have generally recognized that "a policeman in the course of a valid search is entitled to keep his senses open to the possibility of . . . evidence of a crime," *Lair*, 95 Wn.2d at 719, we have never suggested knowledge obtained by one officer may be imputed to the seizing officer, *who is completely unaware* of the facts and circumstances leading up to the seizure based on "plain view." Indeed, we have recognized only that a warrantless arrest, not a warrantless search and seizure, may be executed based on the cumulative knowledge possessed by a team of officers under the

6

"fellow officer" rule. *See State v. Bravo-Ortega*, 177 Wn.2d 116, 297 P.3d 57 (2013). But to fall under the "fellow officer" rule, the information supplied must be from a law enforcement agency. *See State v. Gaddy*, 152 Wn.2d 64, 70-71, 93 P.3d 872 (2004). Here, the information obtained by the police came from first responders on the scene who were non-law-enforcement sources. Consequently, the officer's warrantless seizure could not fall under the fellow officer rule even if it were applied here.

In essence, the majority's holding that Sergeant Zatylny directing Officer Breault to collect Morgan's clothing falls under the plain view exception is really an "ends justify the means" argument since Officer Breault saw nothing to justify a plain view seizure. Importantly, Sergeant Zatylny was not present at Morgan's hospital room to perform a plain view seizure of the clothing. Sergeant Zatylny had more than enough information to obtain a warrant to collect Morgan's clothing. There was no concern that obtaining a warrant here would "be a needless inconvenience [or] dangerous—to the evidence or to the police themselves." *Coolidge v. New Hampshire*, 403 U.S. 443, 468, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971) (plurality portion). Given the facts and circumstances of the investigation, a telephonic warrant would have been easily obtainable, should have been obtained by police here, and, more importantly, is what our constitution required.

## Conclusion

Clothing, without more, is not inherently incriminating evidence. The officer observing and seizing evidence under plain view, must be aware of the surrounding facts and circumstances to have probable cause justifying the warrantless seizure. Because the

7

officer here was directed only to observe, gain information about a missing child, and, later, collect Morgan's clothing as evidence without knowing anything about a criminal investigation, the plain view exception to a warrant is not met. The majority's holding unnecessarily broadens our plain view doctrine and undermines the search warrant requirement under article I, section 7 of the Washington State Constitution. Probable cause to justify the warrantless seizure by the seizing officer was not met, and as such, I respectfully dissent.

_Madsen, J._

Gordon McCld, J.